**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ALEX GUERRA,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION #: 2:24-CV-00002** |
| | § | |
| **CITY OF ARANSAS PASS;** | § | |
| **SAN PATRICIO COUNTY;** | § | |
| **CHIEF OF POLICE ERIC** | § | |
| **BLANCHARD, (In His Individual** | § | |
| **Capacity and as Policymaker for** | § | **JURY** |
| **City of Aransas Pass Police Department)** | § | |
| **CAPTAIN KYLE RHODES,** | § | |
| **(In His Individual Capacity)** | § | |
| **DETECTIVE TROY POE,** | § | |
| **(In His Individual Capacity); and** | § | |
| **JOHN DOES (1-10)** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES, AND DETECTIVE TROY POE'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO THEIR QUALIFIED IMMUNITY**

TO THE HONORABLE U.S. DISTRICT JUDGE DAVID S. MORALES:

NOW COME Defendants, **CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES** and **DETECTIVE TROY POE**, and file this their Motion for Summary Judgment Pursuant to Their Qualified Immunity ("Motion") pursuant to Fed. R. Civ. P. 56. Defendants show the Court the following:

## I. Introduction

The claim against the officers bringing this motion can be summarized as one arising out of a supposed wrongful investigation and prosecution of the Plaintiff for his initial arrest pursuant to a signed warrant for hindering apprehension or prosecution and his eventual indictment on a

different charge: capital murder.[1] In reality, these officers had nothing to do with any capital murder charges or indictment, and Plaintiff was only arrested pursuant to a signed warrant for hindering apprehension or prosecution.[2] Defendant Rhodes obtained a valid warrant for Plaintiff's arrest for the hindering apprehension or prosecution charge from a neutral magistrate, and Plaintiff was arrested for that charge, not capital murder.[3] Prosecutors did not even pursue the hindering apprehension or prosecution charge, and they instead sought and obtained an indictment from a grand jury for capital murder.[4] While much of Plaintiff's First Amended Complaint focuses on the murder charge and how he feels it was unwarranted, these officers had *nothing* to do with that indictment; they sought only an arrest warrant for hindering apprehension or prosecution.[5]

Defendant Blanchard is clearly entitled to qualified immunity as he took no direct action against the Plaintiff at all.[6] Additionally, all of the police officers are entitled to immunity because the only arrest made in this case was made pursuant to a valid arrest warrant signed by a neutral magistrate after their consideration of an affidavit from Defendant Rhodes.[7] None of the officers violated the Plaintiff's constitutional rights, much less a clearly defined right, when Plaintiff was arrested pursuant to a valid arrest warrant. As a result, they are entitled to qualified immunity.

## II. <u>Relevant Facts and Allegations</u>

Plaintiff's brother, Omar Guerra was convicted of murdering Joseph and Rebekah DeGrange execution style in their trailer in the evening of January 23, 2021. Security camera

1 *See* DE 33, Plaintiff's First Amended Complaint.

2 *See* Exhibit A, Affidavit of Chief Eric Blanchard; Exhibit B, Affidavit of Captain Kyle Rhodes; Exhibit C, Affidavit of Detective Troy Poe; and Exhibit D, Affidavit and Warrant for Plaintiff's Arrest for Hindering Apprehension or Prosecution.

3 Exhibit B, C, and D.

4 *See* DE 33, ¶ 65; Exhibits B and C.

5 *Id*.

6 Exhibit A.

7 Exhibits A, B, C, and D.

footage shows Omar preparing for the killing in the trailer park where his brother, Plaintiff Alex Guerra lived, donning body armor and cutting security camera footage before entering the DeGrange home to commit the murders.[8] Omar even walks right up to Plaintiff just after donning his body armor, and Plaintiff can be seen raising his head and looking around just when Omar goes to cut the cameras.[9] Omar was only at the trailer park to purportedly attend a bar-b-que put on by the Plaintiff, and Omar both donned the body armor and cut the security camera's power in front of the Plaintiff. [10]

Plaintiff left the scene just seconds before Omar entered the DeGrange home to commit the murders. Omar then proceeded to shoot and kill the DeGranges and the police were called shortly thereafter. Detective Troy Poe was the detective on call at that time, and he was assigned the case.[11]

Detective Troy Poe began working the case under the supervision of Captain Kyle Rhodes.[12] The two conducted multiple interviews with witnesses at the trailer park at the time of the murders and moved to collect security footage which might show how the murders occurred.[13] While witnesses did provide a large list of potential "suspects," which Plaintiff claims in his petition were not pursued, the security footage shows his brother, not those other potential suspects, donning body armor and disabling security cameras directly before the murders took place.[14]

---

8 Exhibits B, C, D; Exhibit E, Cutting the Security Camera Footage (Omar Guerra is seen walking towards the camera wearing the body armor and cuts the feed shortly thereafter. Plaintiff can be seen at the fire in the background wearing a hat and looking around towards where Omar is heading and up at the camera.), Exhibit F, Donning Body Armor Footage (Omar is seen donning his body armor. Again, Plaintiff can be seen around the campfire. Omar even walks around his car by the fire while wearing the body armor and is directly next to and in front of Plaintiff as the clip ends.); Exhibit G, Deposition Excerpt of Troy Poe (establishing that Alex Guerra is the individual wearing a hat in the video footage).

9 *Id*.

10 *Id*.

11 Exhibit C.

12 Exhibit B.

13 Exhibits B and C.

14 *See* DE 33, ¶ 59; Exhibits E and F.

The detectives determined through interviews that Plaintiff was aware of the security cameras present at the trailer park, that he told his brother about the cameras, and that he was present when Oman Guerra made a call to their sister-in-law to ask her to turn the cameras off.[15]

The detectives also learned that Alex was the one who put on the bar-b-que that served at the impetus for Omar being at the trailer park prior to the murders. [16] The event was only conceived of and organized the same day of the murders, and it was Plaintiff who invited his brother to the event.[17] His brother decided to quickly make the six-hour round trip to attend the party at the same trailer park where he would commit the double homicide.[18]

The park's security footage shows Omar Guerra donning body armor at the bar-b-que just before he entered the DeGrange home to commit the murders.[19] Again, Plaintiff Alex Guerra can be seen in the security footage in the near vicinity when this happened.[20] In fact, Omar approaches Plaintiff beside the bonfire just after he puts on the armor.[21] Neither Alex nor Omar could, as felons, legally possess body armor.[22]

When the officers reviewed the security camera footage from the trailer park where the murders occurred, it showed Omar approach to cut the feed to a camera covering the front of the DeGrange home.[23] Alex Guerra can be seen in view of the camera as well, and was certainly in the

---

15 Exhibit H, Interview with Aracely Lambreton Valle. (Their sister-in-law had moved out of the trailer park already and had no access or control over the cameras.).

16 Exhibits B and C; Exhibit I, Interview of Alex Guerra.

17 *Id*.

18 *Id*.

19 Exhibit F.

20 *Id*.

21 *Id*.

22 *See* Exhibit D; Tex. Penal Code § 46.041.

23 Exhibit E. Other camera feeds were not cut and captured other relevant footage.

near vicinity when the feed was cut.[24] The video footage even shows that Plaintiff was looking around and in the direction of the camera or Omar when Omar went to cut the feed.[25]

When initially interviewed by the police, Plaintiff Alex Guerra never asserted his right to remain silent and, during his interview, he was not under arrest.[26] When Plaintiff did speak to officers he was not forthcoming regarding the body armor or the cameras. Despite the evidence that he knew about both the armor and cameras being cut, and despite indisputable evidence that he was present when both events occurred, he withheld that information from the police.[27]

While Detective Poe was focused on Omar Guerra and the murder charge, Captain Rhodes took charge of the hindering apprehension or prosecution charge against Plaintiff.[28] Captain Rhodes was the one to draft the affidavit in support of a warrant for Plaintiff's arrest.[29]

The complaint laid out the facts detailed above, establishing the facts of the murder, the bar-b-que planned by Alex that brought Omar to the trailer park, that Alex admitted telling Omar of the cameras, that he was present when the camera was cut, that he was present when Omar donned his body armor, that Alex left the scene just prior to the murders, and that he withheld information from the police which hindered their investigation.[30] Specifically, it alleges that

> "based on the totality of the information, the affiant believes that Alex Guerra withheld information from the police. Alex Guerra provided information to the suspect, Omar Guerra, about the surveillance cameras that were disabled by Omar. Alex Guerra set up a situation in which to provide a cover story for Omar's presence on the property (BBQ). Alex Guerra did not provide information about the incident to police, which should have been apparent to him. His actions hindered the timely

---

24 *Id*.

25 *Id*.

26 Exhibit I.

27 *See Id.*; Exhibits E and F. Plaintiff now claims that he did not actually see his brother don the body armor or cut the security feed. However, it would have been difficult for him to miss either event given the security footage that was recovered.

28 Exhibits B and C.

29 Exhibit B.

30 Exhibit D.

apprehension and identification of his brother, Omar Guerra, the suspect in a Capital Murder case, against the laws and dignity of the state of Texas.[31]

The complaint contained no false factual statements, and it was properly signed[32] and sworn to by Captain Rhodes before being presented to a neutral magistrate. The Complaint was presented to Susan Price, a justice of the peace for San Patricio County, Texas.[33] Accordingly, the complaint was reviewed by a neutral magistrate who signed a warrant for the arrest of Alex Guerra.[34]

Alex Guerra was only ever arrested pursuant to this facially valid warrant calling for his arrest for hindering prosecution or apprehension.[35] Defendant Poe made the arrest pursuant to the signed warrant.[36] None of these Defendants sought an arrest warrant for Alex Guerra for murder.[37] They never sought an arrest warrant for illegal possession of body armor.[38] They were not the ones that set the Plaintiff's bail, sought any indictment for murder, or decided to bring his case to trial.[39] Likewise, there is no evidence that they "conspired" with prosecutors to bring any indictment for murder or that they played any part in deciding to proceed with the murder trial.[40]

Captain Rhodes only presented evidence and facts relating to Alex Guerra to the magistrate for a hindering apprehension or prosecution charge, and the magistrate signed a valid arrest warrant for that charge only.[41] Detective Poe simply arrested Alex Guerra pursuant to that facially valid

31 *Id*.
32 *Id*.
33 *Id*.
34 *Id*.
35 *See* Exhibits B, C, and D.
36 *Id*.
37 *Id.*
38 *Id.*
39 *Id.*
40 *Id.*
41 *Id.*

warrant.[42] There is no evidence that Chief Blanchard had any direct involvement with the investigation or arrest at all.[43] None of the officers testified before the grand jury, influenced his bond price, or played any part in indicting him for capital murder.[44]

## III. Exhibit List

| Exhibit Letter | Description |
|---|---|
| A | Affidavit of Chief of Police Eric Blanchard |
| B | Affidavit of Captain Kyle Rhodes |
| C | Affidavit of Detective Troy Poe |
| D | Signed Warrant and Associated Supporting Affidavit for the Arrest of Plaintiff Alex Guerra for Hindering Apprehension or Prosecution |
| E | Footage of Omar Guerra Cutting the Security Camera Footage with Plaintiff Alex Guerra Present |
| F | Footage of Omar Guerra Donning Body Armor with Plaintiff Alex Guerra Present |
| G | Excerpt from Detective Troy Poe's Deposition |
| H | Interview with Plaintiff's Sister-In-Law, Aracely Lambreton Valle |
| I | Video Interview of Plaintiff Alex Guerra |
| J | Courtesy Copy of Unpublished Opinions |

## IV. Argument and analysis

### a. The officers are each entitled to qualified immunity

Plaintiff has brought suit against the Defendant officers in their individual capacity for alleged violations of his constitutional rights. As a result, the officers' actions must be assessed separately and individually to determine if they are entitled to qualified immunity.

Law enforcement officers, such as those bringing this Motion, are entitled to qualified immunity for conduct taken in furtherance of their law enforcement duties and which does not

42 *Id.*

43 Exhibit A.

44 Exhibits A, B, and C.

violate clearly established statutory or constitutional rights of which a reasonable person would have known.[45] To determine if qualified immunity applies, a Court must determine whether 1) a constitutional violation occurred, and 2) whether that constitutional right was conclusively and clearly established at the time the supposed violation occurred.[46] The Court need not complete the analysis in any particular order, and if either element is not met, then qualified immunity will apply.[47] "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.," and "it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith. This is a demanding standard."[48]

**i. <u>No constitutional violation occurred because probable cause existed for Plaintiff to be arrested for hindering prosecution or apprehension</u>**

Plaintiff's claims against the individual officers fail under the first prong because there simply *was* probable cause to arrest the Plaintiff for hindering prosecution or apprehension at the time of his arrest.[49] Even as to Plaintiff's conspiracy and malicious prosecution claims, if probable cause existed, then Plaintiff's claims will fail.[50] While there was a warrant issued by a neutral magistrate, the Court need not consider the independent intermediary doctrine as argued below if there was simply probable cause to support the Plaintiff's arrest. Because probable cause existed for his arrest, there was no constitutional violation, and the officers are entitled to qualified immunity.

---

45 *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015).

46 *Chavis v. Borden*, 621 F. App'x 283, 286 (5th Cir. 2015).

47 *Bryant v. Tex. Dep't of Aging and Disability Servs*., 781 F.3d 764, 770 (5th Cir. 2015) (quoting Thompson v. Mercer, 762 F.3d 433, 437 (5th Cir. 2014)).

48 *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

49 *Villarreal v. City of Laredo*, 17 F.4th 532, 543 (5th Cir. 2021).

50 *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); accord *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("No [constitutional] deprivation, no § 1983 conspiracy.")

Probable cause to arrest an individual "is not a high bar" to meet.[51] An officer need not make an actual showing of criminal activity to establish probable cause, but may simply show a "probability or substantial chance of criminal activity."[52] Within the context of qualified immunity, which protects all but the "plainly incompetent," even those officers who reasonably, but mistakenly, conclude that probable cause exists are entitled to immunity.[53]

The only crime that Plaintiff was ever arrested for, relevant to this case, was hindering apprehension or prosecution.[54] The Crime of hindering apprehension or prosecution is laid out in Tex. Pen. Code §38.05, which states that

> "a person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense … he:
>
> (1) harbors or conceals the other;
>
> (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or
>
> (3) warns the other of impending discovery or apprehension."[55]

Courts have interpreted the statute to broadly apply when a witness withholds information from the police when that information is intentionally withheld and, by withholding it, the witness aids in preventing the prosecution or apprehension of a suspect.[56]

---

51 *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014).

52 *Hall v. Trochessett*, 105 F.4th 335 (5th Cir. 2024)(citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

53 *Mendez*, 823 F.3d at 331; *Hall*, 105 F.4th 335 (citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)); *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867 (1989).

54 Exhibits B, C, and D.

55 Tex. Penal Code § 38.05.

56 *See Sanchez v. State*, No. 03-03-00139-CR, 2005 Tex. App. LEXIS 5084, at *14 (Tex. App. June 30, 2005); *Navarro v. State*, 863 S.W.2d 191, 202 (Tex. App. 1993); *Rushing v. State*, 813 S.W.2d 646, 648 (Tex. App. 1991)(citing to a prior version of the code using almost exactly the same language as seen in the modern code above).

In this case, the officers had probable cause to arrest the Plaintiff because they had reason to believe that Plaintiff aided his brother in avoiding apprehension or prosecution for the murder of the DeGranges.[57]

Officers also concluded that Plaintiff was not being honest during his interview regarding the murder.[58] Despite the video camera evidence showing that he was there when his brother cut the security camera footage or when he donned his body armor, Plaintiff did not tell officers about either event.[59] Both events would have been relevant to prosecuting his brother, and by not mentioning either event, the Plaintiff certainly aided his brother in avoiding prosecution.

Plaintiff may assert that nobody can say with 100% certainty, without an admission from him, that he saw his brother don the body armor or cut the cameras, *however*, 100% certainty is not required to arrest someone based on probable cause. The fact that Omar walks right up to Plaintiff after donning the armor makes it highly likely that Plaintiff knew about the armor and was then dishonest in his interview.[60] Additionally, the footage showing that Plaintiff is looking around while his brother walks off, wearing that same armor, at the exact time the cameras are cut.[61] This shows there is a likelihood he knew about that event as well and was again dishonest in his interview.

While Plaintiff does deny having actually seen either event, the fact that he was in such close proximity and within line of sight when they happened certainly showed a "probability or substantial chance," the bar necessary to meet the probable cause threshold, that Plaintiff knew

---

57 Exhibits B, C, and D.

58 *Id*.

59 *Id*.; Exhibit E and F.

60 Exhibit F.

61 Exhibit E.

about these events and failed to tell officers about them to aid his brother in avoiding prosecution for the murders.[62]

The circumstances surrounding the bar-b-que itself were also suspect.[63] Plaintiff admitted that he knew that his brother had a previous dispute with Mr. DeGrange while the two were incarcerated and they got into a serious, physical fight.[64] Plaintiff also knew that Mr. DeGrange was his neighbor, and invited Omar Guerra to the trailer park anyways. Plaintiff organized this bar-b-que in less than one day, but still invited his brother who lived three hours away and, admittedly, warned his brother about the cameras on the property. [65] Plaintiff did not admit that the bar-b-que was simply a pretext to invite Omar Guerra onto the property to get revenge on the DeGranges.

By the time the officers actually arrested Plaintiff, pursuant to a signed warrant, they had every reason to understand that Plaintiff was not honest during his interview and there was a probability or substantial chance that Plaintiff had aided his brother in escaping prosecution for the murders by withholding and obscuring information.[66] They had articulatable reasons to believe that he aided his brother by both failing to report information to the police and withholding information during his interview.[67]

Even without a warrant, there was enough evidence to meet the "low bar" posed by probable cause to show that there was a "probability or substantial chance" that Plaintiff had withheld information to aid his brother in avoiding prosecution for the DeGrange murders. Due to the existence of probable cause for the Plaintiff's arrest, he cannot now maintain a claim for illegal

---

62 *Id.*; *Hall v. Trochessett*, 105 F.4th 335.

63 *See* Exhibits B, C, and D.

64 *Id.*

65 *Id.*; Exhibit I.

66 Exhibits B, C, and D.

67 *Id.*

arrest, there was no constitutional violation, and the officers are entitled to qualified immunity in this case.

### ii. **No constitutional violation occurred pursuant to the independent intermediary doctrine**

Even if this Court determines that the above-cited evidence is not sufficient to show that the officers had probable cause to arrest, the officers are protected by the independent intermediary doctrine because the arrest was made pursuant to a signed warrant.[68] The independent intermediary doctrine protects officers who make an arrest pursuant to a warrant signed by an independent and neutral magistrate.[69] The doctrine provides officers with a robust shield from liability by breaking the causal chain between an officer's actions and an allegedly false arrest.[70] The shield is so strong that it will even protect officers who seek out a warrant after the arrest takes place or where a grand jury later indicts the arrestee.[71]

While the shield may be pierced in a very limited circumstance, the exception does not apply in this case. There is a "taint" exception that could apply to an officer who knowingly withholds verifiably false information from the affidavit supporting the warrant.[72] That false information must also materially affect the magistrate's actions in issuing the warrant.[73]

"Mere allegations of taint, without more, are insufficient to overcome summary judgment."[74] Plaintiff must "affirmatively show that the Defendants tainted the intermediary's decision. Where evidence is simply subject to differing interpretations, the doctrine will still

68 *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)

69 *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010).

70 *Id*.

71 *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016).

72 *Id*.

73 *Id*.

74 *Cuadra*, 626 F.3d at 813.

protect officers even if they only present an interpretation of the facts which establish criminal culpability.[75]

In this case, Captain Rhodes did submit the facts of this case to a neutral magistrate, who signed the Plaintiff's arrest warrant for hindering prosecution.[76] Detective Poe was the officer who actually arrested the Plaintiff, but he testified that he had no memory of reviewing the affidavit that underpinned the warrant before the arrest.[77] He simply complied with the warrant requirement and placed the Plaintiff under arrest.[78] Chief Blanchard was neither involved in the drafting of the affidavit, the acquisition of the warrant, or the arrest of the Plaintiff.[79] Because neither Detective Poe nor Chief Blanchard had any direct involvement in the procurement of the affidavit, they should absolutely be shielded by the independent intermediary doctrine.

Captain Rhodes must also be shielded by the doctrine because there were no verifiably false statements made within the affidavit. There were no misrepresentations, much less any made with knowledge of their falsity or which might have materially affected the magistrate. The affidavit states as follows:

> On or about the 23rd day of January, 2021 Officers with the Aransas Pass Police Department responded to 1928 Sherwood Forest, Aransas Pass, San Patricio County , Texas, in regards to reported shots fired. Upon arrival, officers discovered that two people had been shot and killed. Investigators were called to the scene to investigate, The victims were Joseph and Rebekah Degrange. They were brother and sister.
>
> During the investigation it was learned that the property was owned by the victims mother, and there were surveillance cameras on the property. There are several trailers on the property. One of the occupants living on the property was identified as Alex Guerra. Information was developed through the surveillance video that

75 *See Buehler*, 824 F3d at 555-56; *Anderson v. City of McComb*, 539 F. App'x 385, 387 (5th Cir. 2013) (affirming court's ruling that the independent intermediary doctrine shielded a police chief where he presented one version of legitimately disputed facts to a magistrate judge).

76 Exhibits B and D.

77 Exhibit C.

78 *Id.*

79 Exhibit A.

> prior to the double homicide, Alex Guerra had a BBQ with his brother Omar Guerra and two adult women. Omar Guerra traveled from Rio Grande City on this date to attend the gathering.
>
> Alex Guerra is a convicted felon, registered sex offender, and currently on parole. Omar Guerra is also a convicted felon with multiple violent felony charges on his history. There are also two other Guerra brothers that are convicted felons (Hector, and Aaron). Just prior to the murders, the line to the camera facing the victim's trailer was cut. During an interview with Alex, he stated that he told Omar about the cameras. He also stated that he was aware of an incident that occurred in the San Patricio Jail in which one of the victims had Omar assaulted by other inmates.
>
> The video shows Omar Guerra putting on a bullet proof vest while at the BBQ and in the presence of Alex. The body armor was later recovered during a search of Omar's vehicle after he was arrested for the capital murder of Joseph and Rebekah Degrange. Alex stated that Omar's vehicle left the property just minutes prior to Alex leaving with his convicted felon girlfriend, Lisa Salazar.
>
> Alex admitted that Omar's girlfriend, Jessica Villareal, was driving Omar's vehicle but did not actually see Omar in the vehicle. According to the video and records, the victims were shot within thirty seconds of Alex Guerra's departure. Alex did not report his knowledge of the events to police. Instead, Alex waited until the police called him in for an interview. He told Detectives that he was expecting the police to contact him. Alex Guerra knew of the history between his brother and the victim (motive). Alex was present when Omar was putting on body armor prior to the murders. Alex was present when the video camera was disabled by Omar. Alex provided information to Omar Guerra about the cameras. When asked to take a polygraph, Alex Guerra refused.
>
> Based on the totality of the information the affiant believes that Alex Guerra withheld information from the police. Alex Guerra provided information to the suspect, Omar Guerra, about the surveillance cameras that were disabled by Omar. Alex Guerra set up a situation in which to provide a cover story for Omar's presence on the property (BBQ). Alex Guerra did not provide information about the incident to police, which should have been apparent to him. His actions hindered the timely apprehension and identification of his brother, Omar Guerra, the suspect in a Capital Murder case, against the laws and dignity of the state of Texas.[80]

The affidavit clearly contains verifiable facts, and alleges that Plaintiff withheld information from the police after the murders took place.

80 Exhibit D.

It is undeniable that Plaintiff was present when the body armor was donned and when the security camera was cut.[81] While Plaintiff posits one interpretation of these facts wherein he was somehow blind to those actions, the police are entitled to posit a different interpretation of those facts when submitting an affidavit to a magistrate.[82] They presented the magistrate with the objective facts that Plaintiff was present when those actions were taken and that he then did not disclose those actions to the police during their interview.[83] A neutral magistrate presented with these objective and true facts signed the Plaintiff's arrest warrant.

As a result, all Defendants must be shielded by the independent intermediary doctrine and the case for illegal arrest against every one of them must be dismissed at this time.

**iii. <u>There is no constitutional violation from the officers in relation to the grand jury proceedings</u>**

Plaintiff alleges that these officers somehow offered false testimony during the grand jury proceedings in his First Amended Complaint. However, none of these officers offered *any* testimony or evidence at the grand jury proceedings.[84] There is absolutely no evidence that any of these officers gave any testimony or evidence at the grand jury proceedings.[85] There is likewise no evidence that they "conspired" with the prosecutors to bring murder charges against the Plaintiff or that they provided prosecutors with any "false" evidence.[86] These officers never sought murder charges against the Plaintiff and only sought an arrest warrant for hindering apprehension or prosecution, a charge that prosecutors elected not to bring against Plaintiff.[87] There simply is no

81 Exhibits E and F.

82 *See Buehler*, 824 F3d at 555-56; *Anderson*, 539 F. App'x at 387

83 Exhibits B, C, and D.

84 Exhibits A, B, and C.

85 *Id.*

86 *Id.*

87 *Id.*

constitutional violation committed by these officers in regards to the grand jury proceeding or the *prosecutor's* decision to indict the Plaintiff for capital murder.

**iv. <u>There is no evidence of racial discrimination against the Plaintiff by any officer</u>**

Plaintiff alleges, without any supporting evidence, that his constitutional rights were violated because these officers harbored some sort of racial animus against him, and it was that supposed animus that drove them to arrest him.[88] There is simply no evidence cited in Plaintiff's First Amended Complaint to support this argument other than the fact that these officers are Caucasian and he is Hispanic.[89] The affidavit which Captain Rhodes submitted in support of the Plaintiff's arrest warrant never once mentions Plaintiff's race; it does mention that Plaintiff withheld information from the police that aided his brother in attempting to evade prosecution for a double homicide.[90] In reality, Plaintiff has simply blindly issued an unfounded, offensive allegation that the officers in this case arrested Plaintiff pursuant to some form of racial bias.[91] There is no evidence that the officers acted in violation of the Plaintiff's constitutional rights by acting in a racially charged manner.

**v. <u>There is no clearly and conclusively established constitutional violation in this case</u>**

Even if the Court finds that there was a constitutional violation due to Plaintiff's arrest for hindering apprehension or prosecution, the Plaintiff must show that the violation was clearly and conclusively established at the time the officers made the arrest. It is not enough for Plaintiff to provide blanket statements that it is established that illegal arrests are clearly established

88 DE 33, ¶ 121.

89 *Id*.

90 Exhibit D.

91 DE 33, ¶121.

constitutional violation, instead the cases cited must be specifically factually similar to the one at bar here.[92] If there are no cases which clearly establish the existence of a constitutional right, and that the officers' actions would have violated that right, then qualified immunity will apply.[93]

Cases interpreting the hindering apprehension or prosecution statute throughout its history absolutely allow for an individual to be arrested and charged when they withhold information from officers during an interview.[94] As a result, there was no clearly established law at the time of Plaintiff's arrest that forbid officers from seeking an arrest warrant where a witness intentionally withholds relevant information during a criminal investigation.

In *Rotenberry v State*, a Texas Court of Appeals interpreted Tex. Pen. Code § 38.05, and found that "lying or withholding information is 'hindering'" and illegal under the statute.[95] There the Court, in interpreting different statutes criminalizing concealing evidence, held that a suspect may hinder either apprehension or prosecution when they intentionally lie to police or withhold information from them.[96] The Court explicitly held that "38.05 reasonably includes both the act of refraining from disclosure and the act of removing from sight or notice or hiding."[97] As a result, the Court held that the hindering apprehension or prosecution statute goes beyond simply criminalizing the act of hiding an individual from the police, but also criminalizes withholding information that could lead to either their capture or, as is relevant to this case, their prosecution.[98]

---

92 *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084 (2011)(holding that "clearly established law" requires specificity and may not be established through generalities.)

93 *See Id*.

94 *Rotenberry v. State*, 245 S.W.3d 583, 589 (Tex. App. 2007); *Sanchez*, No. 03-03-00139-CR, 2005 Tex. App. LEXIS 5084, at *14 ; *Navarro*, 863 S.W.2d at 202; *Rushing*, 813 S.W.2d at 648.

95 *Rotenberry*, 245 S.W.3d at 589.

96 *Id*.

97 *Id.*

98 *Id.*

The hindering apprehension or prosecution statute is broad, and it criminalizes any intentional hinderance of the arrest, prosecution, conviction, or punishment of another.[99] The statute reads in relevant part that "A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense … he: … provides or aids in providing the other with *any means* of avoiding arrest or effecting escape."[100] This has been repeatedly broadly interpreted to criminalize withholding information regarding a crime from investigators.[101]

As a result, there is clearly no established precedent wherein the hindering apprehension and prosecution statute was interpreted in such a way that would have prevented these officers from arresting Plaintiff when there was probable cause to believe that he was withholding information from them regarding the crime. In fact, the above-cited cases establish the opposite proposition and endorse an interpretation where an arrest pursuant to the statute is proper where the officers have probable cause to believe that a witness is withholding information. Even if Plaintiff were able to locate a case where a court declined to apply the statute where a defendant withheld information, these cases show that the law interpreting the statute is unclear and not clearly established at this time. Without clearly established law showing that the hindering apprehension or prosecution statute could not be applied in this case, the officers should be entitled to qualified immunity and the claims against them dismissed.

99 Tex. Penal Code § 38.05.

100 *Id*.

101 *Rotenberry*, 245 S.W.3d at 589; *Sanchez*, No. 03-03-00139-CR, 2005 Tex. App. LEXIS 5084, at *14 ; *Navarro*, 863 S.W.2d at 202; *Rushing*, 813 S.W.2d at 648.

## V. **Conclusion**

All of the officers, Detective Poe, Captain Rhodes, and Chief Blanchard, are entitled to qualified immunity against all of the claims brought against them in this case. First, Chief Blanchard had no direct involvement with the investigation, arrest, or prosecution at all and he clearly committed no constitutional violation against the Plaintiff. Second, Detective Poe and Captain Rhodes committed no constitutional violation when Plaintiff was arrested for hindering apprehension or prosecution pursuant to a signed arrest warrant. There was probable cause to arrest Plaintiff for that charge or, at a minimum, the independent intermediary doctrine shields them from any liability due to the signed arrest warrant.

None of the officers were involved in or influenced the decision made to seek and obtain a grand jury indictment for capital murder. None of them testified during the grand jury proceedings or sought a murder indictment in any way.

Any allegation that the Plaintiff's arrest was influenced by his race is a baseless and offensive claim to make against these Defendants. It is completely without evidence, and the arrest was made with probable cause and pursuant to a signed warrant.

There was no constitutional violation caused by any of these officers, and there is no clearly established law interpreting the hindering apprehension and prosecution statute in a way that would have prohibited the Plaintiff's arrest. As a result, they are entitled to qualified immunity to these claims, which should be dismissed at this time.

WHEREFORE PREMISES CONSIDERED, Defendants Eric Blanchard, Kyle Rhodes, and Troy Poe request that the Court GRANT this Motion and dismiss the Plaintiff's suit against them pursuant to their qualified immunity and the arguments set forth above. They also request any and all relief that this Court deems just.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded, ***VIA EFILING,*** to all counsel, in accordance with the Federal Rules of Civil Procedure on August 30, 2024.

Alexander J. Houthuijzen (Attorney-In-Charge)
*ALEXANDER J HOUTHUIJZEN, P LLC*
917 Franklin St. 230
Houston, Texas 77002
alex@alexthedefender.com
and
Bradford J. Gil de
Bradley G. Ertl
GILDE LAW FIRM, PLLC
5535 Memorial Dr., Suite F, No. 154
Houston, Texas 77007
bj g@gildelawfirm.com
bertl@gildelawfirm.com

Casey T. Cullen
CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
119 S. Main Street (77901)
Post Office Box 2938
Victoria, Texas 77902-2938
ccullen@cullenlawfirm.com

*/s/ James McKibben*
James McKibben

Respectfully submitted

By: */s/ James McKibben*

James McKibben
*Attorney-in-Charge*
State Bar No. 13713000
Federal ID No. 914
jmckibben@mcv-law.com
Marshall Gardner
Of Counsel
State Bar No. 24123828
Federal I.D. No. 3755601
mgardner@mmjw-law.com
McKIBBEN, MARTINEZ, JARVIS & WOOD, L.L.P.
555 N. Carancahua, Ste. 1100
Corpus Christi, Texas 78401-0841
Telephone: 361.882.6611
Facsimile: 361.883.8353

**ATTORNEYS FOR DEFENDANTS CITY OF ARANSAS PASS, TEXAS, CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES, AND DETECTIVE TROY POE**