**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

**ALEX GUERRA,**
***Plaintiff***

**v.**

**CITY OF ARANSAS PASS;**

**SAN PATRICIO COUNTY;**

**CHIEF OF POLICE ERIC BLANCHARD (In His Individual Capacity and as Policymaker for City of Aransas Pass Police Department);**

**CAPTAIN KYLE RHODES (In His Individual Capacity);**

**DETECTIVE TROY POE (In His Individual Capacity); and**

**JOHN DOES (1 – 10);**
***Defendants***

**CASE NO. 2:24-CV-00002**

*For the following Causes of Action:*

I. 42 U.S.C. 1983 – MALICIOUS CRIMINAL PROSECUTION
II. 42 U.S.C. 1983 – FALSE ARREST & FALSE IMPRISONMENT
III. 42 U.S.C. 1983 – *MONELL* CLAIM
IV. 42 U.S.C. 1983 – SUPERVISORY LIABILITY
V. 42 U.S.C. 1983, 1985 – CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
VI. STATE LAW CLAIM – MALICIOUS CRIMINAL PROSECUTION
VII. STATE LAW CLAIM – ABUSE OF PROCESS
VIII. STATE LAW CLAIM – FALSE IMPRISONMENT
IX. STATE LAW CLAIM – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
X. STATE LAW CLAIM – MALICE, TEX. CIV. PRAC. & REM. CODE Chapter 41

**HON. DAVID S. MORALES,** ***presiding***

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES, AND DETECTIVE TROY POE'S MOTION FOR SUMMARY JUDGEMENT ON QUALIFIED IMMUNITY

TO THE HONORABLE U.S. DISTRICT COURT JUDGE DAVID S. MORALES:

COMES NOW, Plaintiff, Alex Guerra (hereinafter "Plaintiff" or "Mr. Guerra"), by and through his attorneys of record and files this PLAINTIFF'S RESPONSE IN OPPOSITION TO

DEFENDANTS CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES, AND DETECTIVE TROY POE'S MOTION FOR SUMMARY JUDGEMENT ON QUALIFIED IMMUNITY ("Response") and in support thereof, shows unto this Honorable Court the following:

## I. BRIEF STATEMENT OF THE PARTIES AND CLAIMS

Plaintiff respectfully acknowledges the Court's ongoing efforts and careful consideration in overseeing this matter and permitting discovery. Plaintiff recognizes the complexities inherent in litigating claims under 42 U.S.C. 1983 and the realities of such litigation, particularly when issues of constitutional rights and qualified immunity are at play.

In light of the permitted discovery and Defendants' Motion for Summary Judgment ("MSJ"), Plaintiff has been made aware of facts not previously known. Given Chief of Police Eric Blanchard's **Exhibit A** in support of his MSJ at para. 3-6 and his consistent deposition testimony on this point, Plaintiff has no objection to this Court granting summary judgment as to Chief of Police Eric Blanchard ("Blanchard") on the issue of qualified immunity. Likewise, given Detective Troy Poe's **Exhibit C** at para. 5-7, and his consistent deposition testimony on this point, Plaintiff has no objection to this Court granting summary judgment as to Detective Troy Poe ("Poe") on the issue of qualified immunity. Accordingly, while this Response may cite evidence from Blanchard and Poe, Plaintiff does not respond substantively as to those individuals and welcomes this Court to streamline its analysis and focus on Captain Kyle Rhodes ("Rhodes"), as Plaintiff's Response does raise a genuine issue of material fact such that summary judgment should be denied as to that defendant.

The discovery process has been instrumental in identifying and strengthening Plaintiff's remaining claims against Defendants Captain Kyle Rhodes, City of Aransas Pass, and San Patricio

County. These claims rest on solid evidentiary foundations, legal grounds, and raise important questions that merit continued litigation.

## II. POINT-COUNTERPOINT STATEMENT OF GENUINE DISPUE & PLAINTIFF'S STATEMENT OF FACTS

Summary judgment is not proper because Plaintiff shows that there are genuine disputes of material fact and that Defendant is not entitled to judgment as a matter of law. The court must view all the facts and draw all reasonable inferences in the light most favorable to the nonmovant. *See Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Scott v. Harris*, 550 U.S. 372, 378-380 (2007); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir.2005). When there are two opposing versions of the facts, the court cannot adopt that version for summary-judgment purposes. *E.g., Scott*, 550 U.S. at 380 (court declined to adopt nonmovant's version of facts because they were so contradicted by videotape that no reasonable jury could have believed them) Herein and below, Plaintiff sets forth those facts of disagreement that raise a genuine issue of material fact – to wit:

### A. Point-Counterpoint Statement of Genuine Dispue

1. Agree. Defendants' MSJ at p. 2 states that Omar Guerra ("Omar") is responsible for the double homicide. Plaintiff's counsel does not represent Omar Guerra. Plaintiff and his counsel do not negate that Omar Guerra was found guilty of capital murder; Plaintiff's only distinction and counterpoint is that Omar Guerra's actions, guilt, and conviction are not Plaintiff's.

2. Disputed. Next, Defendants state at p. 3, para. 1, and footnote 8 circumstantial evidence as to Plaintiff that was specifically rejected by a unanimous juror of Plaintiff's peers. That is, Defendants state that "Omar both donned the body armor and cut the security camera's power *in front of* Plaintiff." This "fact" is apparently made to suggest that Plaintiff *saw* this action, understood this action, or was somehow complicit in Omar's conduct. Whether and to what extent "*in front of*" is circumstantially alleged, same is not definitive proof of what Plaintiff *saw*, as directly disputed in

**Exhibit 1**. Whether the jury believed the circumstantial evidence of Omar's "attend[ed] a bar-b-que" as some pretext to "prepar[ation] for the killing" before "cutting security camera footage before entering the DeGrange home to commit the murders" is without question – they found him guilty. Again, however, circumstantial evidence of Omar's guilt is not evidence of Plaintiff's guilt, and Plaintiff disputes that "raising his head and looking around" means he saw Omar's action, understood this action, or was somehow complicit in Omar's conduct.

3. Agree & Disputed. At p. 3, para. 2, Defendants state, "Plaintiff left the scene just seconds before Omar entered the DeGrangeshome to commit the murders." While the timing of the shooting is suspicious and disputed in terms of "seconds," it is a true statement that Plaintiff was not at the scene when the murders were committed.

4. Disputed. Plaintiff disputes those "facts" set out in p. 4, as set forth in **Exhibit 1**. Specifically, Defendants state, "Neither Alex nor Omar could, as felons, legally *possess* body armor" – citing Tex. Penal Code § 46.041. To be clear, Plaintiff never "possessed" body armor, as "possession" would require the actual care, custody, control, or management of the object. *See* Tex. Pen. Code § 1.07(a)(39); *see, e.g., Ramirez v. State*, 897 S.W.2d 428, 436–37 (Tex.App.—El Paso 1995, no pet.); *see also, Oaks v. State*, 642 S.W.2d 174, 176–77 (Tex.Crim.App.1982) (holding "mere presence of the defendant at the scene of an offense does not make him a party to joint possession"). This is clearly established.

5. Disputed. Plaintiff disputes those "facts" set out in pp. 5 - 7, as set forth in **Exhibit 1**. Defendants repeat for six pages (2 – 7) their "Relevant Facts and Allegations," which "facts" largely take issue of Omar in the hopes that the circumstantial evidence of his guilt would be conflated to or imputed to Plaintiff. The sum total of bad facts alleged against Plaintiff is that he: (i) put on a bar-b-que, (ii) told Omar about the mere existence of video cameras, (iii) looked around, (iv) was in the area when Omar donned body armor and allegedly cut a video cable, (v) left the scene before

the murders occurred, and (vi) in a conclusory fashion, "withheld information" from the police. Plaintiff seeks to set the record straight, as set forth in **Exhibit 1.**

**B. Plaintiff's Statement of Facts**

6. Plaintiff incorporates by reference, as though set forth fully herein, Plaintiff's **Exhibit 1** as Plaintiff's Statement of Facts. As stated therein, Plaintiff had no communication, specific knowledge, belief, understanding, notion, assumption, suspicion, theory, thinking, idea, and feeling whatsoever regarding: (i) whether Omar Guerra murdered the DeGranges, (ii) any motivation of Omar Guerra to attend the Bar-B-Que on January 23, 2021, (iii) any motivation of Omar Guerra to murder the DeGranges on January 23, 2021, (iv) any motivation of Omar Guerra to wear or display body armor, (v) the number of cameras, location of all of the cameras, whether any of the cameras were working, whether any of the cameras were recording and saving, how any of the cameras functioned, and whether any camera cables were actually cut by Omar Guerra, and (vi) any motivation to cut any camera cable on January 23, 2021. *See* **Exhibit 1**.

7. What Plaintiff does know is that: (i) he invited his brother to a family Bar-B-Que to enjoy food and family company, (ii) he did innocently tell Omar Guerra about the existence of cameras to keep him from misbehaving, (iii) he did leave the scene before the DeGranges' murders, (iv) he did voluntarily cooperate with the police by giving a full interview and turning over his cell phone and passcode, (v) he had no more information or knowledge to give Defendants that would have aided in the apprehension of Omar Guerra any sooner than January 28, 2021, (vi) he did not unlawfully possess body armor on January 23, 2021, (v) he did not hinder the apprehension or prosecution of Omar Guerra, (vi) he was falsely arrested without probable cause for allegedly hindering the apprehension or prosecution of Omar Guerra, and (vii) he was held indefinitely until such times as he was falsely charged with Capital Murder, stood trial for Capital Murder, and was found not guilty by a unanimous jury of my peers in 45 minutes, which wrongful arrest,

imprisonment, and prosecution cost him the loss of his freedom for 728 days. *Id.*

## III. LEGAL STANDARD – QUALIFIED IMMUNITY

When a defendant asserts a qualified immunity defense, the plaintiff bears the burden to prove its inapplicability. *De Angelis v. City of El Paso*, 265 F. App'x 390, 395 (5th Cir. 2008). Courts evaluating § 1983 claims based on allegedly unconstitutional conduct by state actors should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. The first inquiry must be whether a constitutional right would have been violated on the facts alleged. If a violation could be made out on a favorable view of the parties' submissions, the second sequential step is to ask whether the right was clearly established. *Id*.

## IV. LEGAL STANDARD – MOTION FOR SUMMARY JUDGMENT RULE 56

Summary judgment is not proper if the nonmovant shows that there are genuine disputes of material fact and that the movant is not entitled to judgment as a matter of law. FRCP 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence supporting" the non-movant "together with an inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

However, the Court should prioritize the facts presented by the nonmoving party when considering a motion for summary judgement. It is imperative to note that in deciding whether a genuine and material fact issue has been created, the facts and inferences must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The court is prohibited from making any credibility determinations or weighing any evidence. *Id.* at 412-413. Furthermore, the court must disregard all evidence

favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). This standard certifies that the nonmoving party's perspective is given due consideration and that any potential factual disputes are resolved in their favor. *Id.*

Additionally, the court must resolve factual controversies in favor of the nonmovant only when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This means that if the nonmoving party has provided evidence that contradicts the moving party's assertion, the court must favor the nonmoving party's evidence. *Id.* This approach is crucial in maintaining the integrity of the summary judgment process and ensuring that genuine disputes are not prematurely dismissed. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980).

The court is not permitted to weigh the evidence or evaluate the credibility of witnesses when reviewing a motion for summary judgement. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Instead, the court must give credence to the evidence facing the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Reeves*, 530 U.S. at 151. This ensures that the nonmoving party's evidence is given appropriate weight and that any unsubstantiated or conclusional allegation by the moving party are not relied upon. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

Therefore, the Court should adhere to the established legal standards and prioritize the facts presented by the Plaintiff, the nonmoving party, in the Defendants' motion for summary judgment. Any contradictory facts presented by the Defendants should be viewed in the light most favorable to Plaintiff, the non-movant.

## VI. SUMMARY JUDGMENT EVIDENCE

Plaintiff hereby attaches the following summary judgment evidence in support of his Response and incorporates same by reference, as though set forth fully herein:

**Exhibit 1: Affidavit Of Alex Guerra**

**Exhibit 2: Defendant Captain Kyle Rhodes' Answers And Objections To Plaintiff's First Set Of Interrogatories**

**Exhibit 3: Defendant Captain Kyle Rhodes' Answers And Objections To Plaintiff's First Set Of Requests For Admission**

**Exhibit 4: Captain Kyle Rhodes' Deposition**

**Exhibit 5: Plaintiff's FIRST AMENDED CORRECTED Complaint and Jury Demand**

## VII. ARGUMENT AND AUTHORITY

In their motion for summary judgment, Defendants argue that they are entitled to qualified immunity because the Plaintiff knowingly withheld information about Omar Guerra from the Defendants, and that there was sufficient probable cause to arrest Plaintiff for hindering apprehension. However, this claim contradicts the Plaintiff's evidence before this Court and should be disregarded in light of binding case law.

### A. The Defendants Failed to Establish Probable Cause to Arrest Mr. Guerra For Hindering Apprehension

First, by way of predicate, let's define probable cause. Black's Law Dictionary states that probable cause "...***amounts to more than mere suspicion*** but less than evidence that would justify a conviction." Black's Law Dictionary, 7th Ed. 1218 (West 1999) (emphasis added). This comports with Rhodes' own definition and understanding. *See* below; *see also*, **Exhibit 2** at page 23:5-25-24:1-5. Probable cause requires only a probability or substantial chance of criminal activity and not a prima facie showing of such activity. *Illinois v. Gates*, 462 U.S. 213, 243 n.13

(1983); *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *Beck v. Ohio*, 379 U.S. 89, 96 (1964).

The Defendant officers arrested Plaintiff for hindering apprehension or prosecution, pursuant to Tex. Pen. Code §38.05, which states that,

> "a person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense … he:
> (1) harbors or conceals the other;
> (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or
> (3) warns the other of impending discovery or apprehension."

*Id.* The reasons for the arrest was stated in Rhodes' Reponses to Interrogatories – to wit:

> 11. "CRIMES" & CHARGES. Identify, detail, and explain all crimes Alex Guerra allegedly committed and all charges which were filed against Alex Guerra from January 2021 until December 2021. If there are crimes that Alex Guerra allegedly committed that were not eventually charged against him, please identify, detail and explain why charges were not filed.
>
> **ANSWER**: ***Alex Guerra was properly charged with hindering prosecution because of the things he did to try and divert the investigation away from his brother.***

P. 5 (Page 7 on PDF "Rhodes Responses to Discovery") (emphasis added). Despite the fact that Omar Guerra had already been apprehended and in custody for five (5) days before Plaintiff's arrest, Rhodes arrested Plaintiff based on subsection 2 of the Tex. Pen. Code §38.05, because "because of the things [Plaintiff] did to try and divert the investigation away from his brother." *Id.* So, let's look to those affirmative acts – those "things" – Plaintiff allegedly "did."

Next, know that we know the alleged crime and the alleged "things that were done," let's look at whether those are actual elements of a crime requiring proof. Fundamentally, the answer is yes. The elements of any crime – including Tex. Pen. Code §38.05 – include the following:

> (1) the defendant,
> (2) the conduct (actus reus),
>
> An "act" is defined as any bodily movement, whether voluntary or involuntary, including speech. Tex. Pen. Code § 1.07(a)(1).

> The actus reus of an offense traditionally has two components: (1) the defendant's voluntary conduct and (2) the social harm it caused. Voluntariness defined. For a person to be criminally liable for an act, omission, or possession, the person must have engaged in that act, omission, or possession voluntarily. See Tex. Pen. Code § 6.01(a).

(3) the result of the conduct (if any),
(4) any required mental state (mens rea),
(5) the negation of any exception, and
(6) the specific occasion.

*See* Tex. Pen. Code § 1.07(a)(22); *Pizzo v. State*, 235 S.W.3d 711, 714–15 (Tex.Crim.App.2007); *Calton v. State*, 176 S.W.3d 231, 233 (Tex.Crim.App.2005). As Tex. Pen. Code §38.05 requires intent, it is defined as follows: A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Pen. Code § 6.03(a); *see Koah v. State*, 604 S.W. 2d 156, 160 n.1 (Tex.Crim.App.1980).

Turning to Defendants' MSJ, Defendants argue that Plaintiff "withheld information" from the police which aided "in preventing the prosecution or apprehension of a suspect." Here, the application makes no sense when officers already had Omar Guerra in custody on January 28, 2024, the exact same day that Alex Guerra came in to speak with Rhodes and Poe. What's more, the Texas Court of Criminal Appeals has construed Texas Penal Code § 38.05 to require proof of *intent to hinder another's apprehension*. *Garcia v. State*, 640 S.W.2d 939, 941 (Tex. Crim. App. 1982). Logically, what the Defendants are arguing does not align with the principles of criminal jurisprudence. What's missing from the probable cause calculus in this case is probable cause of intent to hinder another's apprehension – absent intent, no probable cause. Finally, Defendants simply can't meet the requirements of probable cause as set forth below. And, furthermore, they can't show any affirmative acts – those "things" – Plaintiff allegedly "did."

Turning to the testimony of Rhodes, he states that to have probable cause you need more

than mere suspicion or a gut feeling, you need evidence that is more likely true than not true – to wit:

> "Q: Okay, and during the deposition of Troy Poe, you produced the affidavit that you made in this case for the hindering apprehension or prosecution, true?
> A: True.
> Q: Okay. And we'll get to that document in a moment. But you would agree with me and with your fellow officers that probable cause, as defined, is a reasonable ground based on evidence to suspect that a person has committed or is committing a crime, true?
> A: Yes.
> Q: And that probable cause requires evidence, true?
> A: facts and evidence is right in the definition, so, yes.
> Q: okay. And because we're talking about probable and cause, when we say "probable," we mean more likely than not, meaning 51 percent, true?
> A: Yes
> Q: okay and because of that, probable cause requires more than mere suspicion, true?"
> A: Yes.
> Q: And so gut feelings, I believe, I think isn't good enough; you need actual evidence, actual facts to support probable cause, true?
> A: Yeah, you would - - you need actual facts, yes.

**Exhibit 2** at page 23:5-25-24:1-5. Then, on the elements of Texas Penal Code Section 38.05, Rhodes is able to satisfy none of them with exception to element (2) "provides or aids in providing the other with any means of avoiding arrest or effecting escape" – to wit:

> Q. Just looking at Texas Penal Code Section 38.05, I want to understand your arrest and your charge. Is it your position based on your investigation that Alex Guerra was harboring Omar Guerra?
> A. No, I never alleged that he harbored him.
> Q. Okay. Is it --
> A. I -- go ahead.
> Q. Yes. Is it your position that Alex Guerra was concealing the identity of Omar Guerra?
> A: I never alleged that he concealed Omar Guerra.
> Q: looking at (a) (2) - -
> A: Yes.
> Q: Is it your position that Alex Guerra was providing aid to Omar Guerra?
> A: Yes.
> Q: By means of avoiding arrest?
> A: Yes.

**Exhibit 2** at page 25:17-25-26:1-8

"Q: And looking at 38.05, subsection (a)(2), you've already told me avoiding arrest, is it your position that Alex Guerra was providing aid to effect an escape? And do you need to talk to your lawyer about that?
A: I'm going to say I didn't allege that in my complaint."

**Exhibit 2** at page 29:20-25-30:1-2

"Q: Okay. Looking at C, is it your position, based on your investigation, that Alex Guerra was warning Omar Guerra of impending discovery or apprehension?
A: That was not known to me. I would refer to Detective Poe Who looked at the phone evidence. I'm not sure if there were phone records showing that he warned him of discovery or apprehension, so I can't answer that."

**Exhibit 2** at page 30:17-25

"Q. Okay. And just because of how the question is asked, I - - it is a true statement that you did not present any evidence to the magistrate for your probable cause that Alex Guerra was warning Omar Guerr of impending discovery or apprehension, true?
A: True."

**Exhibit 2** at page 31:6-11. Given that the sole element for "provides or aids in providing the other with any means of avoiding arrest or effecting escape," we then turn what evidence shows probable cause as to this element.

On the issue of Rhodes' evidence of probable cause, Rhodes testified as follows:

"Q: Taking a step back. Looking at the paragraph above, he also stated that he was aware of an incident that occurred at San Patricio Jail in which one of the victims had Omar assaulted by other inmates. How does that provide aid and providing Omar Guerra a means of avoiding arrest?"
A: It doesn't."

**Exhibit 2** at page 47: 7-13. While Defendants will no doubt state that this is evidence of motive and that Plaintiff knew about potential motive, but so did everyone else. And, this fact was communicated to Rhodes within hours of the murders.

"Q: And what evidence was concealed or lost or destroyed in those five days by Alex Guerra?
A: Well, we've never recovered a murder weapon, so there is that. Of course, his phone was completely erased and dumped, so that's another thing.
Q: And who's the "he" in that phone was erased?

A: Omar's phone.

**Exhibit 2** at page 49: 3-9. How again is Rhodes' receiving notice of the murders and acquiring information from neighbors that Omar Guerra was present at the Bar-B-Que within hours of the murders somehow put Plaintiff in a position that he could have somehow magically turned over the murder weapon or stop an alleged data-dump of Omar's phone? It doesn't; this is nonsensical.

> "Q: Okay. In your investigation in this case, specifically hindering prosecution and specifically providing aid to Omar Guerra with any means of avoiding arrest, did you find any evidence that Alex Guerra allegedly told Omar Guerra the location of any additional cameras?
> A: No. That he had discussed that the cameras were operation and that the cameras were there."
>
> "Q: My question to you is a bit more specific. You have no evidence, no statement from Alex Guerra, no statement from any other person, you have no evidence that Omar - - that Alex Guerra ever told Omar Guerra the location of any cameras, true?
> A: The location, if you're going to get that specific, then, no."
>
> Q: Okay. Well, here's the deal: You have this evidence, and you also have 30 days to read and sign. And so if you want to review this video on your larger screen and you are - - and you want to correct your testimony, if you want to fill out an errata and say, "I see Alex Guerra looking over at Omar Guerra at" and give me a time stamp, that's fine. But as you sit here today, testifying to our jury under oath - -
> A: Yes.
> Q: - - looking at "Omar Cuts Wire Camera 2" mp4, you cannot testify with any level of certainty that Alex Guerra is look over to see Omar Guerra cut a wire for a camera, true?
> Mr. McKibben: Objection, argumentative.
> Q: You can answer the question.
> A: I'm sorry, off of this particular video, no, I cannot.

**Exhibit 2** at page 50:17-24; 51: 6-12; 58: 24-25-59:1–15 respectively. Here is Defendants' "evidence" of the cameras. This evidence is incompetent.

Next, Defendants try to use a discredited methodology – Plaintiff's refusal to take a polygraph – as pretext to arrest – to wit:

> Q: Refusing a polygraph is not probable cause, true?
> A: True.
> Q: And that was clearly established before January 21st, 20 - - January 23, 2021,

true?
A: Yes.

**Exhibit 2** at page 70:10-15. Here is why Defendants wanted to use a discredited methodology – because they wanted to confirm the only basis they had for hindering apprehension – their "belief" that Plaintiff knew and refused to tell – to wit:

Q: Yeah. In your interview and investigation of Alex Guerra, you commented that he was transparent and that you didn't –
A: Yes.
Q: -- that he was forthcoming with information, true?
A: I did mention that. I did state that at that time. And then later on, I applied evidence and interviewed other people, and that's how I developed my probable cause. I believe that Alex Guerra did provide some information, but I also believe that he provided pertinent information and left out other information.
**Q: What information did he leave out?**
***A: I believe that he left out the part - - I believe that he knew his brother killed the victims, and he would speak to that.***

Q: okay. So to be clear, it is just your belief or your feeling that Alex Guerra knew that Omar Guerra killed the DeGranges, true?
A: Based on case facts and my knowledge of the investigation and conducting interviews and everything else, yes, I believe that he knew.
**Q: Okay. And that's your belief, that is your feeling? It's a belief that you have.**
***A: It is.***

**Exhibit 2** at page 75:5-20 Page 83:17-25. But as stated above, a belief is not probable cause, it is not evidence, and it is not good enough. In the end, Defendants have no competent summary judgment proof establishing probable cause for the arrest of hindering apprehension.

Under Fifth Circuit precedent, "the probable cause inquiry looks at the totality of facts and circumstances within a police officer's knowledge at the moment of arrest." *United States v. Wadley*, 59 F.2d 510, 512 (5th Cir. 1995). A corollary of that rule is that officers may not disregard facts tending to dissipate probable cause. *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). The probable cause inquiry "does not require an officer to affirmatively investigate potential defenses, but it prohibits him from ignoring knowledge that he already possesses." *Thomas v. City of Galveston*,

800 F. Supp. 2d 826, 836 (S.D. Tex. 2011).

While Rhodes had no probable cause as to Alex Guerra committing hindering apprehension or prosecution, pursuant to Tex. Pen. Code §38.05, Rhodes did have probable cause as to another person – Omar Guerra's girlfriend and get-away driver, and he did *NOTHING* about it – to wit:

> Q: Okay. And so the evidence that you collected on Jessica, Omar Guerra's girlfriend, that would be evidence of hindering apprehension or prosecution, true?
> A: Yes, I believe it would support that charge.
> Q: Yet you never submitted that charge, true?
> A: I did not.
> Q: And she was in a close, personal, intimate relationship with Omar Guerra, true?
> A: Yeah, I would say that's true.

**Exhibit 2** at page 79:1-9.

Finally, Rhodes knows the consequences of his actions. In addition to establishing the elements for a 42 U.S.C. § 1983 cause of action (*see* **Exhibit 3** at RFAs 10-13), Rhodes further admitted each of the following:

> 14. ADMIT or DENY that the right to be free from malicious prosecution is a right secured under the U.S. Constitution and laws.
>
> 15. ADMIT or DENY that the right to be free from false arrest is a right secured under the U.S. Constitution and laws.
>
> 16. ADMIT or DENY that the right to be free from false imprisonment is a right secured under the U.S. Constitution and laws.
>
> 17. ADMIT or DENY that the right to be free from abuse of process is a right secured under the U.S. Constitution and laws.
>
> 23. ADMIT or DENY that to indict someone without probable cause would be to act with deliberate indifference to the rights of that person.
>
> **RESPONSE:** ***Admit [as to all].***

**Exhibit 3** at RFAs 14-17, 23.

### B. Familial Ties Do Not Justify Probable Cause

Throughout the Defendants' investigation, this litigation, and in their MSJ, Defendants have repeatedly relied on Plaintiff's familial relationship with Omar Guerra, the actual suspect, as one of their reasons to justify their actions and the constitutional violations committed against the Plaintiff. However, reliance on familial association alone cannot create probable cause. As the Supreme Court has held, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search or seize that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). This law is and has been clearly established for 45 years.

Despite receiving numerous statements from witnesses affirming that the Plaintiff was not like his brother Omar Guerra, and had no involvement in the crimes, the Defendants persisted in treating Plaintiff as a suspect based solely on his kinship. Rather than hindering apprehension, the Plaintiff was fully cooperative. He voluntarily drove to the police department and participated in a voluntary interview with Defendants. Moreover, Plaintiff went so far as to voluntarily hand over his cellphone for the Defendants to search, demonstrating his willingness to assist with their investigation. *See* **Exhibit 1**.

### C. The Defendants Are Not Shielded by The Independent Intermediary Doctrine Exception

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Curtis v. Sowell*, 761 F. App'x 302, 304 (5th Cir. 2019). Yet there is an exception to the independent intermediary rule if the plaintiff shows that the deliberations of that intermediary were in some way tainted by the actions of the defendant. *Id*. A plaintiff must show that the officer's malicious motive led the officer to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *Id*. Mere allegations of taint may be adequate to survive a motion to dismiss where the complaint

alleges other facts supporting the inference. *Id.* at 304-05.

In the affidavit submitted by Defendant Rhodes, there is a glaring omission: at no point does Defendant Rhodes reference the numerous exculpatory witness statements taken during the investigation. These statements were not only consistent with each other but also aligned with the Plaintiff's testimony, clearly indicating that the Plaintiff had no involvement in the murders of the DeGranges or hindering the apprehension of Omar Guerra. Instead of presenting this critical information, Defendant Rhodes focused on less relevant details, such as mentioning that the Plaintiff "waited" be interviewed by the Defendants (the wait was 5 days). However, the affidavit fails to disclose that the Plaintiff, after being notified, arrived at the Aransas Pass Police Department promptly after finishing work on the very same day – a fact that demonstrates his cooperation rather than evasion. *See* **Exhibit 1**.

What's more, waiting is not a crime, as Plaintiff had no duty to come forth any sooner. Under Texas law, a person generally does not have a duty to report a crime to law enforcement. However, the Texas Penal Code DOES carve out a duty to report when a person observes the commission of a felony:

> Sec. 38.171. FAILURE TO REPORT FELONY. (a) A person commits an offense if the person:
> (1) observes the commission of a felony under circumstances in which a reasonable person would believe that an offense had been committed in which serious bodily injury or death may have resulted; and
> (2) fails to immediately report the commission of the offense to a peace officer or law enforcement agency under circumstances in which:
> (A) a reasonable person would believe that the commission of the offense had not been reported; and
> (B) the person could immediately report the commission of the offense without placing himself or herself in danger of suffering serious bodily injury or death.
> (b) An offense under this section is a Class A misdemeanor.

Thus, generally a person does not have a duty to report a crime to law enforcement. The only time there is a duty to report a crime to law enforcement is when a felony is committed AND a

person believes the offense has NOT been reported.

Alex Guerra had no duty to report the murders of the DeGranges to the police because he was not at the scene of the murders at the time of the murders and police were called to the scene of the murders well before Alex Guerra returned to his trailer. In other words, the murders of the DeGranges had already been reported to the police so there was nothing for Alex Guerra to report. That is, there is no evidence to support (A) above: (A) a reasonable person would believe that the commission of the offense had not been reported. The question then turns to whether Alex Guerra had any obligation to speak to law enforcement after they asked to interview him – the answer is no. There is no legal obligation for regular citizens to assist police in their investigations and persons can invoke their rights under the 5th Amendment of the U.S. Constitution and Article 1 Section 10 of the Texas Constitution to avoid speaking with the police.

Additionally, Defendant Rhodes completely omits crucial facts that further highlight the Plaintiff's willingness to assist with the investigation. Not only did Plaintiff voluntarily come in for questioning, but he also handed over his cellphone, provided his password, and explicitly consented to the Defendants searching it. This level of cooperation directly undermines the Defendants' suggestion that the Plaintiff was attempting to hinder apprehension or obstruct their investigation. Furthermore, the affidavit was made with reckless disregard for the truth. *Franks v. Delaware*, 483 U.S. 154 (1978). The truth is that nowhere in the affidavit does it state that Rhodes or Poe have evidence that Alex Guerra, the Plaintiff, intended to hinder the apprehension of Omar. This evidence is just plainly not in the affidavit. Intent is an important element of a crime. Fundamentally, a crime cannot happen without two parts: an actus reus and mens rea. The affidavit lists out facts and puts the Defendants' spin on them, but it does not contain where Alex Guerra had the mens rea to commit the crime of hindering apprehension. The affidavit is devoid of such information. Without this element, there cannot be probable cause.

Furthermore, the omission of facts from Defendant Rhodes' affidavit raises serious concerns about the accuracy and completeness of the information presented to justify probable cause. For instance, the affidavit omits that by January 28, 2024, Poe and Rhodes already had Omar Guerra in custody. Again, Alex Guerra could not hinder the apprehension of someone who is already in custody that defies logic. By withholding exculpatory evidence and key details of the Plaintiff's voluntary cooperation, the Defendants misdirected Municipal Judge Susan Price, an independent intermediary, into believing probable cause existed where none was present.

### D. Defendants Case Law is Too Broad in its Application of Tex. Pen. Code § 38.05 and Therefore Inapposite

Defendants cite to *Navarro v. State* in their Motion stating that same somehow supports the argument that "Courts have interpreted the statute to broadly apply when a witness withholds information from the police when that information is intentionally withheld and, by withholding it, the witness aids in preventing the prosecution or apprehension of a suspect." However, Defendants' interpretation and use of *Navarro* is misplaced. Defendants attempt to use *Navarro* to argue that Tex. Pen. Code § 38.05 is broadly construed and thus same statute applies in the present case.

What Defendants fail to identify for this Court is that *Navarro* is a case where the person found to have allegedly hindered the apprehension/prosecution of a murderer *literally buried the body*. To be clear, the facts in *Navarro* are not analogous to the present case and fail to provide Defendants with support for their claim that Alex Guerra was rightfully arrested for hindering apprehension or prosecution. In *Navarro*, the person found to have allegedly hindered the apprehension/prosecution of a murderer was at the scene of the murder when the murder took place – Alex Guerra was not at the scene of the murders when the murders took place. In *Navarro*, the person found to have allegedly hindered the apprehension/prosecution of a murderer helped

hide the murder weapon – it has not been claimed that Alex Guerra helped hide the weapon used in the murders of the DeGranges. In *Navarro*, the person found to have allegedly hindered the apprehension/prosecution of a murderer helped the murderer dispose of the body by burying the body – it is not claimed that Alex Guerra assisted in disposing of the bodies of the DeGranges as same bodies were not moved from the scene of the murders. *Navarro* does not support the argument that "Tex. Pen. Code § 38.05 is broadly construed." It instead helps the Court understand why Tex. Pen. Code § 38.05 was even written – to assist in the apprehension of persons who perform some kind of *affirmative conduct* to make it significantly more difficult for the authorities to apprehend and/or prosecute the offender.

Like that shown above, Defendants' cite to *Rushing v. State* is also not on point. Defendants once again attempt to broaden the application of Tex. Pen. Code § 38.05 to include persons like Alex Guerra but fail to do so. A mere cursory review of the facts in *Rushing* once again show that the facts in *Rushing* are not analogous to the present case. In *Rushing*, two methamphetamine addicts proceeded to ride in a vehicle with a methamphetamine dealer wherein an argument ensued between one of the methamphetamine addicts and the dealer. The argument became so violent – so much so that "Gibbs" – one of the two methamphetamine addicts proceeded to strike the victim while in the vehicle. Without Gibbs' knowledge, "Rushing" – the other of the two methamphetamine addicts – began stabbing the victim while in the vehicle. The victim then escaped the assault and eventually died at the hospital. In *Rushing* there was no finding of hindering apprehension or prosecution on the part of Gibbs.

Unlike in *Rushing*, Alex Guerra was not at the scene of the murders when the murders took place. Unlike in *Rushing*, there has been no claim made by Defendants that Alex Guerra assaulted either of the DeGranges prior to the DeGranges being murdered. And like in *Rushing*, Alex Guerra voluntarily spoke to law enforcement about what he knew about the murders of the DeGranges.

Defendants' citing to *Rushing* at best is misplaced and at worst (from the perspective of Defendants) supports Plaintiff's arguments that Plaintiff's actions and/or inactions concerning the Incident made the basis of Plaintiff's claims do not meet all of the elements of Tex. Pen. Code § 38.05.

### E. Rhodes' Lack of Probable Cause Destroys Hindering Apprehension and Creates Plaintiff's Causes of Action.

Plaintiff has alleged, *inter alia*, 42 U.S.C. 1983 – Malicious Criminal Prosecution; 42 U.S.C. 1983 – False Arrest & False Imprisonment; State Law Claim – Malicious Criminal Prosecution; State Law Claim – Abuse of Process; and State Law Claim – False Imprisonment in his Plaintiff's First Amended Corrected Complaint And Jury Demand. *See* Exhibit 5. Fundamental to each of these claims is a basic concept of propriety – being done properly (i.e. based on probable cause). *Id*. While Plaintiff recognizes that this is a summary judgment response and pleadings or allegations are not summary judgment proof, Plaintiff has verified his Response and its exhibits by and through his **Exhibit 1** and Plaintiff cited numerous authority in the footnotes and throughout, which authority he incorporates by reference as though set forth herein. Suffice it to say, when Rhodes brought the Tex. Pen. Code § 38.05 Hindering Apprehension charge and arrest without probable cause, as set forth above, he indicted himself to Plaintiff's claims and causes of action, which survive summary judgment.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Honorable Court deny DEFENDANTS CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES, AND DETECTIVE TROY POE'S MOTION FOR SUMMARY JUDGEMENT ON QUALIFIED IMMUNITY. Plaintiff prays for such further additional relief at law or in equity to which he may show himself justly entitled.

Dated: September 20, 2024

Respectfully Submitted,

**ALEXANDER J. HOUTHUIJZEN, ATTORNEY-AT-LAW, PLLC**

*/s/ Alexander J. Houthuijzen*
ALEXANDER J. HOUTHUIJZEN
TSB#: 24101224 | Fed ID No. 3083690
917 Franklin St. 230
Houston, Texas 77002
(713) 600-9902 – phone
(832) 565-9003 – facsimile
alex@alexthedefender.com

*—AND—*

**GILDE LAW FIRM, PLLC**

BRADFORD J. GILDE
TSB#: 24045941 | Fed ID No. 4010300
BRADLEY G. ERTL
TSB#: 24110896 | Fed ID No. 3510320
5535 Memorial Dr., Suite F, No.154
Houston, TX 77007
281-973-2771 – facsimile
281-973-2772 – phone
bjg@gildelawfirm.com
bertl@gildelawfirm.com

***Attorneys for Plaintiff Alex Guerra***

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, a true and correct copy of this Plaintiff's Response In Opposition To Defendants Chief Of Police Eric Blanchard, Captain Kyle Rhodes, and Detective Troy Poe's Motion For Summary Judgement On Qualified Immunity was served upon the following parties by ECF notification to:

McKIBBEN, MARTINEZ, JARVIS & WOOD, L.L.P
James McKibben
jmckibben@mcv-law.com
ATTORNEY FOR DEFENDANTS
City of Aransas Pass, Chief of Police Eric Blanchard,
Captain Kyle Rhodes and Detective Troy Poe

CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
Casey T. Cullen
ccullen@cullenlawfirm.com
ATTORNEY FOR DEFENDANT
San Patricio County

*/s/ Alexander Houthuijzen*
Alexander Houthuijzen