United States District Court
Southern District of Texas
**ENTERED**
July 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEX GUERRA, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 2:24-CV-00002 |
| | § | |
| CITY OF ARANSAS PASS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART MOTION FOR LEAVE AND GRANTING MOTION FOR SUMMARY JUDGMENT**

This case is complex—in law, fact, and litigation. Currently pending before the Court is Plaintiff's motion for leave to file an amended complaint, (D.E. 51), and a motion for summary judgment filed by Defendants Chief of Police Eric Blanchard, Captain Kyle Rhodes, and Detective Troy Poe. (D.E. 43). The motions have been fully briefed, (D.E. 44); (D.E. 45); (D.E. 53); (D.E. 56); (D.E. 59); (D.E. 62), and the Court held a hearing. October 1, 2025 Minute Entry. After review, the Court **GRANTS in part** Plaintiff's motion for leave, (D.E. 51), and **GRANTS** the motion for summary judgment, (D.E. 43).

## I. Background

As a previous Order from the Court laid out the factual background of this case at length, (D.E. 49, p. 1–7), the Court provides only a brief summary to orient the reader.[1]

[1] Here arises the first major complication—the Court views the facts differently between deciding a motion for leave to amend and a motion for summary judgment. When deciding whether to grant leave to amend a complaint, one factor the Court considers is whether amendment would be futile. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). And when ruling on a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). By contrast, at the summary judgment stage, "[a] party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v.*

After Plaintiff left a trailer park cookout, Plaintiff's brother murdered two individuals who resided in the trailer park. Defendants Poe and Rhodes began investigating and, through video evidence and witness interviews, discovered the identities of Plaintiff and his brother. Officers then arrested Plaintiff's brother for capital murder.

At some point after Plaintiff's brother was arrested, police interviewed Plaintiff, and Plaintiff gave a statement. Defendant Rhodes then drafted an affidavit explaining the facts that caused him to believe that Plaintiff was hindering apprehension or prosecution of his brother. Rhodes presented the affidavit to a neutral magistrate, who signed an arrest warrant for Plaintiff for hindering apprehension or prosecution. Plaintiff was subsequently arrested on that charge. Plaintiff was not arrested for murder.

Eventually, both Plaintiff and his brother were indicted for capital murder. A jury convicted Plaintiff's brother but acquitted Plaintiff. Plaintiff then filed the instant lawsuit, raising several claims against several defendants, which the Court further explores below.

## II. Discussion

The Court begins by identifying all live Defendants and Plaintiff's live claims against them. At this point in the case, there are five named Defendants: City of Aransas Pass ("City"), San Patricio County ("County"), Captain Kyle Rhodes, Detective Troy Poe, and Chief of Police Eric Blanchard (as to the latter three, collectively, the "individual Defendants"). There are also John Does (1-10) as unnamed Defendants. Listing the live claims against each Defendant, however, is

---

*Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Because the Court is thus faced with two different factual lenses, the facts as the Court presents them here do not strictly comport with either standard. Rather, these facts are presented for contextualization purposes only and represent a composite picture gleaned from the pleadings, evidence, and discussion at the Court's various hearings. Where the factual presentation is salient to adjudication of either Plaintiff's motion for leave to amend or Defendants' motion for summary judgment, the Court will note as much and re-present the facts accordingly.

where the second major complication arises—different Defendants are at different stages of litigation.

While the County is at the motion-to-dismiss/motion-for-leave-to-amend stage, *see* (D.E. 22); (D.E. 49); (D.E. 51), the individual Defendants are at the summary judgment stage, *see* (D.E. 43). Meanwhile, the City has not filed any dispositive motions. *See* (D.E. 22, p. 1) (motion to dismiss filed only by the County); (D.E. 43, p. 1) (motion for summary judgment filed only by the individual Defendants). However, the City has appeared in Defendants' response to Plaintiff's motion for leave, (D.E. 56), and Defendants' supplemental brief in support of summary judgment, (D.E. 59).[2]

The Court further notes that the County previously filed a motion to dismiss, (D.E. 22), which the Court granted, (D.E. 49). In a sense, then, Plaintiff has no live claims against the County. However, because the Court offered Plaintiff the opportunity to amend his complaint, (D.E. 49, p. 24), whether Plaintiff has any live claims against the County turns on whether the Court grants Plaintiff's motion for leave to amend, (D.E. 51). For the sake of clarity, the Court will assume that Plaintiff's amendment is sufficient and that he has live claims against the County.

Finally, the Court notes that at the October 1, 2025 summary judgment hearing, Plaintiff and all Defendants agreed that Defendants Poe and Blanchard should be dismissed pursuant to their qualified immunity. October 1, 2025 Minute Entry; *see also* (D.E. 62, p. 2). As the Parties confirmed their agreement on the record, October 1, 2025 Minute Entry, the Court construes the Parties representations as a stipulated dismissal as to Defendants Poe and Blanchard pursuant to

[2] The Parties dispute whether the City has properly moved for summary judgment. (D.E. 59); (D.E. 62). To be sure, the City had not raised any arguments as to why the Court should grant summary judgment as to it prior to the supplemental brief. *See* (D.E. 43) (the individual Defendants' summary judgment motion not raising any arguments as to the City); (D.E. 59) (Defendants' supplemental brief including arguments as to why the Court should grant summary judgment as to the City).

Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Accordingly, the Court **ORDERS** the Clerk of Court to **TERMINATE** Detective Troy Poe and Chief of Police Eric Blanchard as Defendants in this matter. Plaintiff further confirmed his intent to withdraw all state-law claims against Defendant Rhodes, October 1, 2025 Minute Entry; *see also* (D.E. 62, p. 2), to which Defendants agreed. October 1, 2025 Minute Entry. Plaintiff thus retains only federal causes of action against the remaining Defendants.

The table below summarizes the remaining live (named) Defendants, Plaintiff's remaining live claims against them, and their respective stages of litigation:

| DEFENDANT | PLAINTIFF'S CLAIMS | LITIGATION STAGE |
| --- | --- | --- |
| City of Aransas Pass | (1) *Monell* (customary policy)<br>(2) *Monell* (failure to train)<br>(3) *Monell* (failure to supervise)<br>(4) Ratification<br>(5) Conspiracy | Summary Judgment Arguments Raised |
| San Patricio County | (1) *Monell* (customary policy)<br>(2) *Monell* (failure to train)<br>(3) Ratification<br>(4) Conspiracy[3] | Motion to Dismiss/Motion for Leave to Amend |
| Captain Kyle Rhodes | (1) § 1983 Malicious Prosecution<br>• Hindering prosecution<br>• Capital murder<br>(2) § 1983 False Arrest | Summary Judgment |

[3] Plaintiff brought a myriad of other claims against the County, but the Court dismissed those claims in its previous Order. (D.E. 49, p. 24). The four claims listed in this chart are the only four which the Court permitted Plaintiff an opportunity to amend, *id.*, and thus are the only claims the Court considers for the purpose of listing Plaintiff's "live" claims against the County.

| | | |
|---|---|---|
| | • Hindering prosecution<br>• Capital murder<br><br>(3) § 1983 False Imprisonment<br>• Hindering prosecution<br>• Capital murder[4] | |

Having clarified the current posture of this case, the Court now proceeds to analyze the pending motions.

**A. Motion for Leave**

The Court first addresses Plaintiff's motion for leave to amend. (D.E. 51). The decision to grant or deny leave to amend is "entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted). Generally, leave to amend should be freely granted; the district court must have a "substantial reason" to deny leave. *Id.* (citation omitted). Courts consider five factors when deciding whether to grant or deny leave to amend: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; and (5) futility of the amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent such factors, the leave sought should, as the rules require, be freely given." *Id.* (internal quotation marks omitted). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports*, 751 F.3d at 378 (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).

---

[4] To this point, Defendants have focused their briefing on whether Rhodes is expressly liable under any of these three claims on the theory that Rhodes lacked probable cause to arrest, detain, and prosecute Plaintiff for hindering apprehension or prosecution. *See generally* (D.E. 43). However, the facts in Plaintiff's complaint (both operative and proposed amended) support all three claims on the separate theory that Rhodes lacked probable cause to arrest, detain, and prosecute Plaintiff for capital murder. *See generally* (D.E. 33); (D.E. 51-1). Defendant has not moved for summary judgment as to these claims on the capital-murder theory, and Plaintiff has not raised this issue in its briefing. Accordingly, even if the Court were to grant summary judgment as to Plaintiff's claims against Rhodes on the hindering-apprehension-or-prosecution theory, Plaintiff would still have live claims against Rhodes.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citation omitted). Conclusory statements and legal conclusions, however, are not entitled to the same presumption of truth. *Iqbal*, 556 U.S. at 678–79.

In its previous Order granting the County's motion to dismiss, the Court permitted Plaintiff one more chance to correct deficiencies in his "*Monell* claims based on a customary policy . . . *Monell* claims based on a failure to train . . . Ratification theory claims . . . [and] Conspiracy claims." (D.E. 49, p. 24).

In his motion for leave to amend, Plaintiff lists seven changes contained in his amended complaint which he claims address the deficiencies in the four claims the Court identified:

1. At para. 7, the words "unknown Sheriff jailers" was added to John Does (1-10)
2. Plaintiff deleted section "III. Procedural History" in its entirety;
3. Plaintiff deleted section "IV. Plaintiff's Request For Discovery…";
4. At para. 16, the words "unknown Sheriff jailers" were added and the following words were deleted "for conspiracy and state law claims";
5. At para. 20, the following was deleted: "The only way to get Alex Guerra charged and prosecuted was to lie. And lie they did" as unnecessary;
6. Plaintiff deleted sections "Count 6 – Count 10" – Plaintiff's "State Law Claims," as same were dismissed; and
7. Plaintiff added section X "42 U.S.C. 1983 – FOURTH & FOURTEENTH AMENDMENTS MONELL CLAIM, FAILURE TO TRAIN & RATIFICATION, AS TO SAN PATRICIO COUNTY."

(D.E. 51, p. 4). The Court has reviewed Plaintiff's proposed second amended complaint, (D.E. 51-1), and finds the listed changes accurately reflect Plaintiff's actual changes. *Compare* (D.E. 51, p. 4), *with* (D.E. 51-1). The first six changes, however, bear no relation to the deficiencies the Court identified in its order granting the County's motion to dismiss. *Compare* (D.E. 51, p. 4), *and* (D.E. 51-1), *with* (D.E. 49, p. 24); *see also* (D.E. 49, p. 24) (permitting Plaintiff one more chance to correct deficiencies in his "*Monell* claims based on a customary policy . . . *Monell* claims based on a failure to train . . . Ratification theory claims . . . [and] Conspiracy claims").

Plaintiff's seventh change, (D.E. 51-1, p. 54–59), on the other hand, cures some deficiencies but fails to remedy others. Specifically, the Court finds that Plaintiff fails to cure the deficiencies in his *Monell* customary-policy claim and conspiracy claim, but has cured the deficiencies in his *Monell* failure-to-train under the single-incident exception claim and ratification claim. The Court addresses each claim in turn.

*i. Customary Policy*

In brief, Plaintiff alleges that the County has "an ongoing, historical, and unwritten custom, policy, and usage of engaging in investigatory tactics and police procedures that involve the incarceration of innocent people." (D.E. 51-1, p. 27). Specifically, Plaintiff alleges that the County's customs "include, but are not limited to" the following:

> [F]alsely arresting a person on a lesser crime to detain, delay, and coerce a confession; presenting false facts to a magistrate to obtain probable cause; presenting false facts to a magistrate to obtain a high bond; presenting false facts to a magistrate to violate the person's Fourth Amendment rights; and retaliating against a person's Constitutional invocation of their Miranda right to remain silent through false charges and imprisonment.

*Id.* In its previous Order, the Court characterized these alleged customs as "a pattern or practice of violating the rights to be free from unreasonable search and seizures, false arrest, wrongful incarceration, and malicious prosecution." (D.E. 49, p. 13). For the sake of clarity, the Court

generalizes the customs Plaintiff alleges, (D.E. 51-1, p. 27), into the cause of action each custom might support, *see* (D.E. 49, p. 13).

a. Law

Municipal liability under section 1983 "results [when] a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). To establish municipal liability under section 1983, a plaintiff must establish three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the formal policy or custom. *Id.* at 578 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (2018)).

A municipal policy may consist of either a formal policy or a customary policy. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). A customary policy is defined as "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). In other words, "[a] customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)). If the municipal policy arises via custom, a plaintiff must show "actual or constructive knowledge of such custom." *See Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (cleaned up) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984)).

To show the existence of a customary policy, a plaintiff must at a minimum show

"sufficiently numerous prior incidents," as opposed to "isolated instances." *Jackson*, 852 F. App'x at 135 (quoting *Petersen v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)). "Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court [has] set a specific number of incidents that is required for a plausible claim of municipal liability under a custom or practice." *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2019 WL 4603794, at *7 (N.D. Tex. Aug. 12, 2019) (Rutherford, Mag. J.) (citations omitted), *adopted*, No. 3:17-CV-01208-M-BT, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (Lynn, C.J.). When assessing the numerosity requirement, courts "look at the incidents in context." *Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 2836332, at *10 (S.D. Tex. June 4, 2024) (Ellison, J.) (citing *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 2277504, at *10–11 (N.D. Tex. June 23, 2022) (Fitzwater, J.)). "'Where the violations are flagrant or severe,' a shorter pattern of conduct can demonstrate that 'diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). Accordingly, the number of incidents required to survive a motion to dismiss varies. *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2017) (per curiam) (citing *Moreno v. City of Dallas*, No. 3:13–CV–4106–B, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015) (Boyle, J.)).

In addition to the numerosity requirement, the "pattern [of incidents] requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (cleaned up) (internal quotation marks omitted) (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)); *O'Brien v. City of Corpus Christi*, 2:21-CV-00275 (S.D. Tex. March 3, 2025) (Morales, J.) (D.E. 46); *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th

Cir. 2018) ("[T]o plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." (citing *Connick v. Thompson*, 563 U.S. 51, 64–67 (2011)).

b. Analysis

In its previous Order, the Court dismissed Plaintiff's *Monell* customary policy claim on the following grounds:

> Plaintiff's allegations fail to meet the similarity standard. Plaintiff's claims in this suit are based on alleged violations of his right to be free from unreasonable searches and seizures, false arrest, wrongful incarceration, and malicious prosecution. (D.E. 33, p. 36, 43–44). But Plaintiff's prior cited examples all involve claims of either excessive force or failure to treat. *See id.* at 42. Plaintiff's citation to various, unrelated constitutional violations does not suggest a pattern or practice of violating the rights to be free from unreasonable searches and seizures, false arrest, wrongful incarceration, and malicious prosecution. Prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *McCully*, 406 F.3d at 383 (collecting cases). In other words, because Plaintiff alleges the pattern and practice at such a high level of generality, Plaintiff cannot satisfy the similarity standard. *See Sinegal v. City of El Paso*, No. EP-19-CV-107, 2020 WL 13442013, at *17 (W.D. Tex. July 6, 2020) (Cardone, J.) (finding six incidents over the course of four years insufficient given the high level of generality at which plaintiff defined the alleged practice).

(D.E. 49, p. 13–14).

Attempting to remedy this pleading deficiency, Plaintiff references three cases,[5] which he alleges stem from "violations related to unlawful detentions, excessive force, or wrongful imprisonments, demonstrating a persistent, widespread custom of deliberate indifference by

[5] Plaintiff also cited a fourth case in both his original and proposed amended complaint, which the Court did not address in its previous Order, but which does not change the analysis. (D.E. 51-1, p. 27 n.3) (citing *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018)). That is because *Winfrey* concerned constitutional violations by police officers in San Jacinto County, Texas, *Winfrey*, 901 F.3d at 488, whereas this suit concerns San Patricio County, Texas, *see generally* (D.E. 51-1). A plaintiff cannot establish a pattern or practice of constitutional violations by citing to instances of (admittedly similar) constitutional violations by a completely different legal entity.

policymakers." (D.E. 51-1, p. 58).[6] None of the three cases Plaintiff references push Plaintiff's *Monell* claim over the similarity hurdle.[7]

First, Plaintiff cites to *Quick v. San Patricio County,* No. 2:12-cv-00056 (S.D. Tex.) (Ramos, J.). Reviewing the factual allegations of the complaint in *Quick* shows that the issue there was excessive force, not false arrest, wrongful incarceration, or malicious prosecution. *See id.* (D.E. 1, p. 4–7).

Second, Plaintiff cites to *Ueckert v. San Patricio County*, No. 2:11-cv-00222 (S.D. Tex.) (Ramos, J.). Although the factual allegations in that complaint at least hint at a false arrest claim, the primary concern was, once again, excessive force. *See id.* (D.E. 1, p. 2–4). Indeed, at trial, the jury was only instructed on excessive force, assault, and battery. *Id.* (D.E. 33, p. 4–8).

Third, Plaintiff cites to *Perez v. San Patricio County*, 2:10-cv-0038 (S.D. Tex.) (Ramos, J.). The factual allegations in *Perez* gave rise to a false arrest claim alongside an excessive force claim, *see id.* (D.E. 1, p. 3–4), thereby implicating at least one similar constitutional violation as Plaintiff alleges occurred here, *see* (D.E. 51-1, p. 5–24). However, Plaintiff has still failed to sufficiently plead a pattern or practice of false arrests as he has cited no other similar instances, and one prior example is not enough. *Moreno v. Hidalgo Cnty.*, No. 7:24-CV-0344, 2025 WL 2043978, at *17 (S.D. Tex. June 6, 2025) (Hacker, J.) ("[O]ne factually similar incident is not

[6] Although Plaintiff references the cases by name, Plaintiff's Counsel did not include any other identifying information about the cases, such as a docket number, online database identifier, jurisdiction, or even the year of filing/disposition. (D.E. 51-1, p. 8). Defendant's Counsel offered slightly more help by including the year each case was filed. (D.E. 53, p. 3). The Court **ADMONISHES** Counsel for both Parties to provide proper legal citations in any future briefing.

[7] Nor can Plaintiff cross the similarity (or, for that matter, numerosity) requirement by alleging that his list of cases is "without limitation." (D.E. 51-1, p. 58). That Plaintiff alludes to the potential existence of more instances of allegedly similar constitutional violations by the County does not suffice to plead a pattern or practice of similar constitutional violations. *See Reyes v. Greer*, 686 F. Supp. 3d 524, 547 (W.D. Tex. 2023) (Cardone, J.) (finding a plaintiff's allegation of "'public pleadings' in other lawsuits" insufficiently specific to support a pleading of a pattern or practice).

sufficient to allege a pattern or practice." (relying on *Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011))), *adopted*, 2025 WL 2044192 (S.D. Tex. July 21, 2025) (Tipton, J.); *Babino v. Harris Cnty.*, No. H-24-1870, 2025 WL 816641, at *1 (S.D. Tex. Mar. 13, 2025) (Rosenthal, J.) ("The case law in [the Fifth Circuit], however, makes clear that four prior incidents in the five years before the incident at issue are not enough to show a pattern or practice.").[8]

Thus, the Court finds that Plaintiff has failed to cure the deficiencies in his *Monell* customary policy claim—the claim would still fail to survive a Rule 12(b)(6) motion. Amendment would therefore be futile, *Marucci Sports*, 751 F.3d at 378, so the Court **DENIES** Plaintiff's motion for leave to amend as to this claim.

*ii. Failure to Train*

In support of his failure-to-train claim, Plaintiff alleges that the County provided "no training regarding the following":

> Guidance on recognizing clearly exculpatory evidence (e.g., clear alibi, definitive DNA results, witness recantation, or other credible evidence of innocence) or circumstances indicating wrongful detention or incarceration. . . . Procedures for promptly reporting and remedying situations where individuals are held on charges officers recognize or reasonably should recognize as false or unsupported by probable cause . . . Protocol for documenting concerns, preserving evidence, and immediate communication channels to supervisors, prosecutors, or judicial officers. . . . Officers must be trained on clear mandatory reporting policies requiring immediate escalation upon suspicion or confirmation of false charges or detention without probable cause. Reports must document specifics clearly, thoroughly, and objectively. . . . Supervisors should receive training on: Periodic review procedures to verify continued legitimacy of detentions; Clear standards and criteria to independently evaluate officers' reports concerning wrongful detention; and Immediate corrective actions upon credible reports of detention on false charges (e.g., alerting prosecutors, defense counsel, or judicial officers). . . .

[8] In its previous Order, the Court "assume[d] without deciding . . . that Plaintiff's cited examples [were] within a close enough timeframe to be relevant." (D.E. 49, p. 13). That assumption was made prior to performing the similarity analysis. *See id.* Having now determined that Plaintiff has only cited one prior similar incident, the Court revisits that assumption. The *Perez* case was filed in 2010. *Perez v. San Patricio Cnty.*, 2:10-cv-0038 (S.D. Tex.) (Ramos, J.). One similar incident that occurred fourteen years prior to the incident giving rise to this lawsuit far exceeds the acceptable temporal scope for pleading a pattern or practice. *Babino*, 2025 WL 816641, at *1.

> Recognizing obvious innocence claims or exculpatory evidence. . . . Policy Reinforcement and Discipline regarding Clearly defined policy statements prohibiting prolonged detention without probable cause or based on false charges and Explanation of potential discipline (administrative, civil liability, or criminal consequences) for failure to report or address wrongful detention. . . . Constitutional requirements to avoid prolonged detention without reassessment of probable cause.

(D.E. 51-1, p. 56–57).

a. Law

A plaintiff may also establish *Monell* liability on the grounds of failure to train. *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

**1. Pattern of Similar Violations**

"[A] municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'" *Farmer v. Brennan*, 511 U.S. 825, 840 (1994) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). The failure to train municipal employees may constitute a policy, but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality. . ." *Canton*, 489 U.S. at 389.

A plaintiff "must show that 'in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (citing *Canton*, 489 U.S. at 389). "Deliberate indifference is more than mere negligence." *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (citing *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." *Id.* (citing *McCully*, 406 F.3d at 383 n.34). "Notice of a pattern of similar violations is required." *Id.* (citing *McCully*, 406 F.3d at 383).

**2. <u>Single-Incident</u>**

Yet another method for establishing such liability is through the "limited exception for 'single-incident liability'" in the "'narrow range of circumstances' where a constitutional violation would result as 'the highly predictable consequence' of a particular failure to train." *Kitchen*, 759 F.3d at 484 (citing *Brumfield v. Hollins*, 552 F.3d 322, 329 (5th Cir. 2008)). The Supreme Court has described this single-incident exception as encompassing circumstances "so obvious" that the failure to not prevent or train against violations amounts to a deliberate indifference to the plaintiff's constitutional rights. *See Canton*, 489 U.S. at 390 n.10 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)) (noting that the duty to train police officers on the constitutional limitations against deadly force is obvious).

But when the relevant defendants were already equipped with necessary training to prevent a constitutional violation (for example, prosecutors in the context of *Brady* violation), a plaintiff cannot rely on the single-incident exception. *Connick*, 563 U.S. at 64–67 (comparing *Canton*'s hypothetical of armed police officers being untrained on the constitutional limits against deadly force, with *Connick*'s facts of prosecutors being trained in legal—including *Brady*—obligations and professional responsibility). The "single-incident exception 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Henderson v. Harris Cnty.*, 51 F.4th 125, 131 (5th Cir. 2022) (per curiam) (alteration in original) (quoting *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021)). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability" under the single-incident exception. *Kitchen*, 759 F.3d at 485 (quoting *Connick*, 563 U.S. at 68). "[T]he risk must be 'so predictable that failing to train the [municipal personnel] amounted to conscious disregard' for" the plaintiff. *Id.* (alteration in original) (collecting cases); *Bohannan v. Doe*, 527 F.

App'x 283, 300 (5th Cir. 2013) (per curiam) ("Single-incident liability is . . . available in those exceptional instances where minimal training has been offered and the duties assigned carry an obvious need for additional or different training." (first citing *Canton*, 489 U.S. at 390 n.10; and then citing *Walker v. Upshaw*, 515 F. App'x 334, 340 (5th Cir. 2013) (per curiam))); *see also Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) ("[A] plaintiff can show deliberate indifference based on 'single-incident liability' if the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the city to fail to prepare officers for it." (citing *Connick*, 563 U.S. at 63)).

b. Analysis

As to whether Plaintiff has sufficiently pled a failure-to-train claim against the County, *Farmer*, 511 U.S. at 840, the Court has already explained how Plaintiff's proposed second amended complaint does not sufficiently plead a pattern of similar violations. *Supra* II.A.*i*.b; *Sanders-Burns*, 594 F.3d at 381. The Court therefore need only examine whether Plaintiff's proposed second amended complaint sufficiently pleads the single-incident exception.

Again, the exception "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Henderson*, 51 F.4th at 131 (quoting *Hutcheson*, 994 F.3d at 483). For example, in *Brown v. Bryan County*, the Fifth Circuit held that the single-incident exception was satisfied when the city employed an officer with no training, no supervision, and a "reckless background" as he engaged in excessive force. 219 F.3d 450, 462 (5th Cir. 2000) (affirming jury verdict against county). For the exception to apply, a plaintiff must plausibly allege that the defendant failed "to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018) (citations omitted).

In its previous Order, the Court dismissed Plaintiff's single-incident theory for the following three reasons:

> *First*, Plaintiff cannot avail himself of the single-incident exception because he fails to allege—in a non-conclusory fashion—that there was "no training whatsoever." *See Henderson*, 51 F.4th at 130–31. Plaintiff merely alleges that the policymakers, including "the Chief of Police [and] Defendant Eric Blanchard, never chastised, disciplined, or did anything" to remedy the ongoing constitutional violations. (D.E. 33, p. 37). Plaintiff frames his argument for failure to train as Defendant failed to train its employees "to identify when people were not guilty of heinous crimes" and to supervise the defendants. (D.E. 37, p. 13–14).
>
> *Second*, as it stands, Plaintiff's complaint is more akin to a theory of respondeat superior. *See Valle*, 613 F.3d at 549 (citing *Pineda v. City of Houston*, 291 F.3d 325, 334 (5th Cir. 2002)) ("This court has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of respondeat superior liability.").
>
> *Third*, Plaintiff's failure to train claim also fails to satisfy the single-incident exception because "[a] plaintiff has not plausibly pleaded deliberate indifference under the single-incident exception when there are no allegations that support the reasonable inference that an official faced a recurring situation where constitutional violations might occur." *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 625080, at *11 (N.D. Tex. Mar. 3, 2022) (Fitzwater, J.) (collecting cases). Here, Plaintiff fails to do so.
>
> While Plaintiff's allegations are of concern to the Court, Plaintiff provides no allegations as to the deficiency of the failure to train. *See Henderson*, 51 F.4th at 131 ("[V]ague allegations are insufficient to establish 'deliberate indifference' through the single-incident exception."). Further, Plaintiff fails to allege the "clear constitutional duty implicated in *recurrent* situations that a particular employee is certain to face." *Littell*, 894 F.3d at 625 (emphasis added) (citing *Canton*, 489 U.S. at 396). As such, Plaintiff's single-incident claim fails as a matter of law.

(D.E. 49, p. 18–20).

Plaintiff's proposed second amended complaint plainly evinces an intention to allege the single-incident exception based on Sheriff Rivera's purported failure to provide any training. *See* (D.E. 51-1, p. 54–59). Indeed, the phrase "NO TRAINING" (in all caps) appears no less than five times in the complaint. *Id.*

Plaintiff then specifies a myriad of topics that Sheriff Rivera should have trained subordinates on but failed to. *Id.* at 56–57. Particularly relevant here, Plaintiff alleges Sheriff

Rivera failed to train with respect to "[g]uidance on recognizing clearly exculpatory evidence . . . [p]rocedures for promptly reporting and remedying situations where individuals are held on charges . . . unsupported by probable cause . . . [and] criteria to independently evaluate officers' reports concerning wrongful detention." *Id.* at 56. Moreover, "Plaintiff alleges San Patricio County Jail officers received NO TRAINING whatsoever consistent with nationally recognized standards, including standards from the American Correctional Association (ACA)[.]" *Id.* at 57.

The Court finds that Plaintiff's additional allegations in his proposed second amended complaint cure the pleading deficiencies the Court previously identified. First, Plaintiff's proposed second amended complaint alleges, in a non-conclusory fashion,[9] that officers received no training before violating his constitutional rights and describes with specificity the areas in which no training was provided. Second, Plaintiff's allegations sufficiently distinguish his single-incident failure-to-train claim from a simple respondeat superior theory of liability. And third, the topics on which Plaintiff alleges officers received no training implicate at least one "recurring situation where constitutional violations might occur." *Vess*, 2022 WL 625080, at *11. That recurring situation is police investigation and the constitutional safeguards that attach. *Guerra v. Collins*, 916 F. Supp. 620, 633–34 (S.D. Tex. 1995) (Hoyt, J.) ("[P]olice officers and prosecutors ha[ve] a duty to accurately record the statements of the witnesses, to fairly investigate the case, and to disclose all exculpatory evidence.").

---

[9] Determining whether an allegation is conclusory is a difficult task, especially where a plaintiff must plead the absence of something. Here, to sufficiently plead the single-incident exception, Plaintiff is tasked with alleging that officers did not receive any training. It is difficult to imagine how any plaintiff could plead the absence of training in a manner that is not, in some sense, conclusory. And the Court is unaware of any guiding caselaw to help direct plaintiffs how to solve this conundrum. So, the Court finds that, at this stage, Plaintiff has sufficiently alleged, as non-conclusory as is practicable, that the officers did not receive any training; the question of whether officers did or did not receive training is better suited for evaluation at summary judgment, rather than at the pleading stage.

Accordingly, Plaintiff may proceed with his *Monell* liability claim based on failure-to-train through the single-incident exception.

*iii. Ratification*

Plaintiff's proposed second amended complaint contains one paragraph of new factual allegations to support his ratification claim:

> Sheriff Oscar Rivera, an official policymaker for San Patricio County, expressly ratified the unconstitutional actions of the Sheriff's deputies and jail staff by knowingly allowing Plaintiff's continued detention despite clear, credible, and persuasive evidence of Plaintiff's innocence, including alibi witnesses and absence of credible inculpatory evidence. By choosing not to intervene or take remedial action, Sheriff Rivera affirmed and ratified these unconstitutional actions, rendering the County liable under Monell's ratification theory (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

(D.E 51-1, p. 57).

a. <u>Law</u>

"Ratification occurs 'when a subordinate's decision is subject to review by the municipality's authorized policymakers,' and 'the authorized policymakers approve a subordinate's decision and the basis for it.'" *Allen v. City of Galveston*, No. CIV.A. G-06-467, 2008 WL 905905, at *7 (S.D. Tex. Mar. 31, 2008) (Froeschner, Mag. J.) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Ratified misconduct is "chargeable to the municipality because [the authorized policymakers'] decision is final." *Id.* (citing *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004)).

Ratification occurs when "a municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees." *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990). Ratification claims require a "policymaker, an official policy and the 'moving force' of the policy." *Piotrowski*, 237 F.3d at 578.

"The precise standard by which to plead a ratification theory is somewhat unclear as discussed and applied in other Fifth Circuit precedent." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020) (Eskridge, J.) (citing *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 794–97 (S.D. Tex. 2013) (Ellison, J.)). One pleading requirement has been universally accepted: a plaintiff must plead that "a policymaker knowingly approve[d] a subordinate's actions and the improper basis for those actions." *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (per curiam); *Taylor*, 488 F. Supp. 3d at 537.

There is, however, at least some question as to whether two additional pleading requirements exist to plead a ratification claim: (1) that the subordinate's actions were "manifestly indefensible," and (2) that a plaintiff's allegations constitute an "extreme factual scenario." *Taylor*, 488 F. Supp. 3d at 537, 539. The Court explores each of these pleading requirements in turn.

**1. <u>Manifestly Indefensible</u>**

Courts in the Fifth Circuit are split on whether a plaintiff must plead that a subordinate's conduct was manifestly indefensible. *See Hayes v. City of Magee*, 806 F. Supp. 3d 629, 640 (S.D. Miss. 2025) (Reeves., J.) ("Additionally, Fifth Circuit precedent requires a plaintiff to prove that their case . . . involved manifestly indefensible conduct.") (citations omitted); *Samuel v. City of Houston*, 4:22-CV-02900, 2023 WL 6444888, at *9 (S.D. Tex. Sep. 29, 2023) (Ellison, J.) ("Plaintiff's ratification claim fails to meet this standard. A municipality is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as "that version did not show that the deputies' actions were manifestly indefensible." (citation modified)); *but see, e.g.*, *Taylor*, 488 F. Supp. 3d at 537 ("[A] slightly *different* path by which to establish ratification appears by reference above to manifestly indefensible conduct." (emphasis added)).

To resolve this apparent confusion, the Court traces the origins of the manifestly-indefensible doctrine. The Fifth Circuit first introduced the doctrine of manifestly indefensible in *Coon v. Ledbetter*, which dealt with an appeal of a directed verdict. 780 F.2d 1158, 1164 (5th Cir. 1986). After reviewing the facts, the Fifth Circuit concluded that the county was not liable under a ratification theory of *Monell* liability because the county sheriff (policymaker) was merely defending his deputies and "accepting their version of what happened. . . . [which] did not show that the deputies' actions were manifestly indefensible." *Id.* at 1162. Thus originated the rule that "unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." *Covington*, 812 F. App'x at 228 (citing *Coon*, 780 F.2d at 1161–62).

This rule has enjoyed wide citation throughout courts in the Fifth Circuit at summary judgment. S*ee, e.g.*, *Hobart*, 916 F. Supp. 2d at 795. However, the rule has gone largely unacknowledged at the motion-to-dismiss stage. Indeed, of the five Fifth Circuit cases dealing with a ratification claim on a motion to dismiss,[10] only one mentions the manifestly indefensible rule: *Covington v. City of Madisonville, Texas*. 812 F. App'x 219.

The only Fifth Circuit case to address the manifestly indefensible rule at the motion-to-dismiss stage presents the rule as an alternative pleading pathway, rather than an extra pleading requirement. *Id.* ("*Otherwise*, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." (emphasis added)). Given *Convington*'s disjunctive framing and given that no other Fifth Circuit case at the motion-to-dismiss stage even mentions the manifestly

[10] *Benfer v. City of Baytown*, 120 F.4th 1272 (5th Cir. 2024); *Covington*, 812 F. App'x 219; *Robles v. Ciarletta*, 797 F. App'x 821 (5th Cir. 2019) (per curiam); *Quinn v. Guerrero*, 863 F.3d 353 (5th Cir. 2017); *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015).

indefensible rule, the Court concludes that a plaintiff does not need to plead that the subordinate's conduct is manifestly indefensible to state a ratification claim. Rather, the manifestly-indefensible pleading requirement is an alternative to the knowing-approval pleading requirement. *See Covington*, 812 F. App'x at 228; *Taylor*, 488 F. Supp. 3d at 537.

**2. Extreme Factual Scenario**

The next pleading requirement question is whether a plaintiff must plead that the facts giving rise to the constitutional violation constitute an extreme factual scenario. Although the Fifth Circuit has not explicitly established "extreme factual scenarios" as a pleading requirement, "this Court is bound by the Fifth Circuit, which has consistently held that the ratification theory applies only to 'extreme factual scenarios.'" *Samuel*, 2023 WL 6444888, at *9 (citation omitted); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)).

The Fifth Circuit has not, however, articulated a precise test to determine when the facts of a case constitute an extreme factual scenario. Because of the lack of guidance, most district courts have adopted the practice of comparing the facts of the current case to the facts of *Grandstaff v. City of Borger*[11] to determine whether that case presents an extreme factual scenario. *See, e.g.*, *Garcia v. Harris*, No. 4:23-CV-0542, 2024 WL 1291531, at *6 (S.D. Tex. Mar. 26, 2024) (Bryan, Mag. J.), *opinion vacated on reconsideration on other grounds*, *Garcia v. Harris*, 2024 WL 5205920 (S.D. Tex. Nov. 13, 2024) (Bryan, Mag. J.).

To be sure, some district courts have noted that not every Fifth Circuit case which has addressed a ratification claim at summary judgment has required proof of an extreme factual scenario. *Samuel*, 2023 WL 6444888, at *8 (collecting cases). That casts some doubt on whether

---

[11] 767 F.2d 161 (5th Cir. 1985).

a plaintiff must truly plead an "extreme factual scenario," especially given that the Fifth Circuit stands alone in this requirement. *Id.* ("[N]either the Supreme Court nor any other Circuit besides the Fifth Circuit have required a such a [sic] showing."). Nonetheless, the Court assumes that every Fifth Circuit case post-*Grandstaff* which has allowed a ratification claim to survive has, at least implicitly, made a finding that the claim presents an extreme factual scenario,[12] and, therefore, the Fifth Circuit still requires a plaintiff to plead as much. *World Wide St. Preachers Fellowship*, 591 F.3d at 755.

Particularly guiding here is the Fifth Circuit's decision in *Covington*, in which the Court concluded that the district court erred in granting a 12(b)(6) motion where the plaintiff alleged that the police chief failed to intervene to stop an officer's wrongful conduct and covered up evidence of the officer's culpability after the fact. *Covington*, 812 F. App'x at 228–29. Although the *Covington* Court did not expressly classify those facts as extreme, the fact that the Fifth Circuit allowed those ratification pleadings to survive a Rule 12(b)(6) motion implies that those facts did, in fact, constitute an extreme factual scenario. *See id.* at 229 ("[Plaintiff's] ratification assertions, though cursorily stated, are sufficient to survive Rule 12(b)(6) attack."); *cf. Braidwood Mgmt., Inc.*, 70 F.4th at 933 n.36.

In sum, to properly state a ratification claim, a Plaintiff must sufficiently plead (1) knowing approval or manifestly indefensible, ***and*** (2) an extreme factual scenario.

---

[12] The Court draws support for this assumption from the Fifth Circuit's rule of orderliness. The rule of orderliness holds that "one panel of [the Fifth Circuit] may not overturn another panel's decision, absent intervening factors." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 n.36 (5th Cir. 2023) (citation modified). From this rule, it follows that a subsequent panel is applying the law as articulated by a prior panel, even absent an explicit reference to that prior panel's decision or the law cited therein. *Cf. id.* To read subsequent panel decisions as writing out the extreme factual scenario requirement would be to read subsequent panels as departing from, or even overruling, a prior panel's decision.

b. Analysis

In its previous Order, the Court dismissed Plaintiff's ratification claims because "Plaintiff ha[d] failed to plausibly allege that Sheriff Rivera either (1) had actual knowledge of his subordinates' unconstitutional behavior, or (2) that his subordinates' actions were manifestly indefensible." (D.E. 49, p. 21) (citation omitted). As stated above, Plaintiff's proposed second amended complaint contains one paragraph of new factual allegations to support his ratification claim:

> Sheriff Oscar Rivera, an official policymaker for San Patricio County, expressly ratified the unconstitutional actions of the Sheriff's deputies and jail staff by knowingly allowing Plaintiff's continued detention despite clear, credible, and persuasive evidence of Plaintiff's innocence, including alibi witnesses and absence of credible inculpatory evidence. By choosing not to intervene or take remedial action, Sheriff Rivera affirmed and ratified these unconstitutional actions, rendering the County liable under Monell's ratification theory (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

(D.E 51-1, p. 57). This addition, coupled with Plaintiff's allegations earlier in the proposed second amended complaint, *id.* at 19–20, suffices to allege that Sheriff Rivera knowingly approved of the subordinates' allegedly unconstitutional conduct and the basis for it. The Court therefore need not decide whether Plaintiff has pled that the subordinates' actions were manifestly indefensible. *Taylor*, 488 F. Supp. 3d at 537.

These allegations also satisfy the "extreme factual circumstances" test. That is because the circumstances alleged here are sufficiently similar to the factual scenario presented in *Covington*. The plaintiff in *Covington* survived a Rule 12(b)(6) motion by alleging that the chief of police failed to intervene and stop the subordinate's unconstitutional conduct, covered up evidence of the subordinate's culpability, and failed to investigate a statement detailing the subordinate's impermissible acts. *Covington*, 812 F. App'x at 228–29.

Here, the picture Plaintiff paints through his allegations is one where Sheriff Rivera knew his subordinates were detaining Plaintiff without any reason, and continued to allow Plaintiff's detention despite knowing his innocence. *See* (D.E. 51-1, p. 19–20, 57). Taking Plaintiff's well-pled allegations as true, which the Court must do when performing a Rule 12(b)(6) analysis, Sheriff Rivera thus allegedly failed to intervene in the face of unconstitutional conduct and ignored evidence of Plaintiff's innocence. *See id.* That is akin to *Covington* and therefore qualifies as an extreme factual scenario at the pleading stage. The Court finds that Plaintiff has corrected the pleading deficiencies as to his ratification claim.

*iv. Conspiracy*

Finally, Plaintiff advances a § 1983 conspiracy claim against the County. (D.E. 51-1, p. 53–54). The Court has found no new allegations in Plaintiff's second proposed amended complaint regarding conspiracy that were not already present in Plaintiff's operative complaint. The extent of Plaintiff's conspiracy allegations are as follows:

> Defendants conspired amongst each other and with prosecutors . . . Defendants conspired amongst themselves . . . to take the false statements, affidavits, and/or evidence and concocted a scheme before a grand jury . . . . the district attorneys and the county sheriff conspired to wrongfully imprison Plaintiff in the hopes of getting a wrongful conviction . . . . [Defendants and others] conspired . . . to wrongfully imprison[] Plaintiff . . . knowing that he was not guilty and innocent of capital murder . . . . [Defendants] work[] in tandem . . . . they operate together under a common objective to reach a common goal . . . . the wrongful arrest and imprisonment of Plaintiff . . . . Conspirators in this case include the following [Defendants] . . . . [and] Defendants reached an agreement amongst themselves to frame Plaintiff for the double homicide[.]

(D.E. 51-1, p. 2, 23, 29–31, 38–39, 53).

a. <u>Law</u>

For a § 1983 conspiracy claim, "[t]he plaintiff must not only allege facts that 'establish (1) the existence of a conspiracy involving state action,' but also '(2) a deprivation of civil rights

in furtherance of the conspiracy by a party to the conspiracy.'" *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)). As to the first element, "a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citing *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979)). "[M]ore than a blanket of accusation is necessary to support a § 1983 [conspiracy] claim." *Id.* (collecting cases). Plaintiff's complaint, when "placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 557). A plaintiff must allege "specific facts showing that" the defendants "*themselves* acted in furtherance of a conspiracy to violate" the plaintiff's civil rights. *Shaw*, 918 F.3d at 419.

b. Analysis

In its previous Order, the Court dismissed Plaintiff's conspiracy claims with the following rationale:

> Here, Plaintiff alleges that the "district attorneys and the county sheriff engaged in this conspiracy with the intent to secure a wrongful conviction or coerce an unconstitutional confession from Plaintiff to implicate his brother and thus make [Defendant]'s case easier." (D.E. 37, p. 15). But Plaintiff fails to point to "specific facts" how Defendant (or the other Defendants) furthered the conspiracy. *See generally* (D.E. 37, p. 14–15); *see also Arsenaux*, 726 F.2d at 1024 ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977))). In sum, Plaintiff fails to allege conduct that suggest "a preceding agreement, not merely *parallel conduct* that could just as well be independent action." *Jabary*, 547 F. App'x at 610 (emphasis added) (quoting *Twombly*, 550 U.S. at 557). As a result, Plaintiff's conspiracy claims fail as a matter of law.

(D.E. 49, p. 22–23). The new section of Plaintiff's proposed second amended complaint is wholly devoid of any new factual allegations to support his conspiracy claim, *see* (D.E. 51-1, p. 54–59), and nothing has changed in the rest of the proposed second amended complaint to alter the Court's

prior analysis. Once again, Plaintiff fails to allege conduct that suggests "a preceding agreement, not merely parallel conduct that could just as well be independent action." *Jabary*, 547 F. App'x at 610 (citation omitted). Indeed, all of Plaintiff's allegations are bare legal conclusions, rather than "specific allegation[s] of facts tending to show a prior agreement." *Arsenaux*, 726 F.2d at 1023–24; *see also Hey v. Irving*, 161 F.3d 7, *3 (5th Cir. 1998) (per curiam) (finding a plaintiff's "bare conclusory allegation that all three defendants demonstrated a meeting of the mind absent any specific facts showing that the defendants reached an agreement" insufficient to plead a conspiracy claim (citation modified)). Plaintiff's proposed second amended complaint therefore fails to state a conspiracy claim, and amendment would thus be futile. *Marucci Sports*, 751 F.3d at 378.

*v. Conclusion on Motion for Leave*

After reviewing Plaintiff's proposed second amended complaint, the Court finds that it fails to remedy the deficiencies for some claims but is sufficient to survive a Rule 12(b)(6) motion for other claims. Specifically, as to Plaintiff's *Monell* customary-policy claim and conspiracy claim, the Court concludes that Plaintiff's proposed second amended complaint still "fails to state a plausible claim upon which relief can be granted," and therefore amendment would be futile. *Marucci Sports*, 751 F.3d at 378. The Court therefore **DENIES** Plaintiff's motion for leave to amend with respect to those claims. (D.E. 51).

However, Plaintiff's *Monell* failure-to-train under the single-incident exception claim and ratification claim may proceed. Accordingly, the Court **GRANTS in part** Plaintiff's motion for leave, (D.E. 51), and **ORDERS** the Clerk to file, as a separate docket entry, Plaintiff's proposed second amended complaint. (D.E. 51-1).

Below is an updated table of live claims reflecting the Court's ruling on Plaintiff's motion for leave to amend:

| DEFENDANT | PLAINTIFF'S CLAIMS | LITIGATION STAGE |
|---|---|---|
| City of Aransas Pass | (1) *Monell* (customary policy)<br><br>(2) *Monell* (failure to train)<br><br>(3) *Monell* (failure to supervise)<br><br>(4) Ratification<br><br>(5) Conspiracy | Summary Judgment Arguments Raised |
| San Patricio County | (1) *Monell* (failure to train)<br><br>(2) Ratification | N/A |
| Captain Kyle Rhodes | (1) § 1983 Malicious Prosecution<br>• Hindering prosecution<br>• Capital murder<br><br>(2) § 1983 False Arrest<br>• Hindering prosecution<br>• Capital murder<br><br>(3) § 1983 False Imprisonment<br>• Hindering prosecution<br>• Capital murder | Summary Judgment |

**B. Motion for Summary Judgment**

Having granted Plaintiff's motion for leave to amend, (D.E. 51), the Court now analyzes the pending motion for summary judgment. (D.E. 43).[13] Before addressing the motion itself,

[13] Although the Court previously referred to this motion as the individual Defendants' motion for summary judgment, because Poe and Blanchard have been dismissed from this case, the summary judgment motion now solely concerns Defendant Rhodes.

however, the Court must decide whether the City has properly moved for summary judgment in Defendants' supplemental brief. (D.E. 59).

There is no question that the City did not independently move for summary judgment and that the City did not intend to join Rhodes's motion for summary judgment. *See* (D.E. 43, p. 1) ("NOW COME Defendants, **CHIEF OF POLICE ERIC BLANCHARD, CAPTAIN KYLE RHODES** and **DETECTIVE TROY POE**, and file this their Motion for Summary Judgment Pursuant to Their Qualified Immuinity[.]"). Indeed, the only reference to the City in Rhodes's motion is the caption. *See id.* Thus, the Court can confidently conclude that the City's first and only argument for summary judgment appears in Defendants' supplemental brief. (D.E. 59).

The Court is wary that the City, by including summary judgment arguments as to itself in the supplemental brief, may have exceeded the permissible scope of the supplemental brief the Court authorized Defendants to file. *See* (D.E. 58, p. 2) ("The supplemental briefing **SHALL** address whether summary judgment is proper on Plaintiff's remaining state law claims against Rhodes (1) on immunity grounds or (2) on the merits)."). Although the Court did not explicitly proscribe Defendants' supplemental brief from including summary judgment arguments as to the City's liability, the Court neither requested nor authorized such arguments either.

The Court also notes that it will require at least one more round of summary judgment briefing in light of its decision to grant Plaintiff's motion for leave to amend, as the County must be afforded the opportunity to file a motion for summary judgment as to the claims against it. Given the significant overlap between the type of claims Plaintiff asserts against the County and the City, the potentially vague permissible scope of supplemental briefing, and the Court's desire that motions for summary judgment be fully and appropriately briefed, the Court will not entertain

the City's arguments for summary judgment contained within Defendants' supplemental brief at this time. (D.E. 59).

Accordingly, the Court **ORDERS** the Parties to confer regarding any potential discovery that has not already been completed relevant to Plaintiff's claims against the City and the County. The Court further **ORDERS** the Parties to file a joint status report **on or before August 24, 2026,** stating the date planned discovery can reasonably be completed. The Court will enter an amended scheduling order, including a new summary judgment deadline for all Parties, based on the Parties' stated discovery-completion date.

Once again, the Court updates the table of live claims:

| DEFENDANT | PLAINTIFF'S CLAIMS | LITIGATION STAGE |
|---|---|---|
| City of Aransas Pass | (1) *Monell* (customary policy)<br>(2) *Monell* (failure to train)<br>(3) *Monell* (failure to supervise)<br>(4) Ratification<br>(5) Conspiracy | Discovery |
| San Patricio County | (1) *Monell* (failure to train)<br>(3) Ratification | Discovery |
| Captain Kyle Rhodes | (1) § 1983 Malicious Prosecution<br>• Hindering prosecution<br>• Capital murder<br>(2) § 1983 False Arrest<br>• Hindering prosecution<br>• Capital murder<br>(3) § 1983 False Imprisonment<br>• Hindering prosecution<br>• Capital murder | Summary Judgment |

The Court now proceeds to analyze Rhodes's summary judgment motion as to Plaintiff's three § 1983 claims on the hindering-prosecution theory. (D.E. 43).

*i. Law*

a. <u>Summary Judgment</u>

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1017–18 (5th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of identifying the portions of the record it believes show the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this requirement, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that" a genuine issue of material fact exists. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The nonmoving party "must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 457 (S.D. Tex. 2012) (Rosenthal, J.) (citing *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)), *overruled on other grounds by McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463 (5th Cir. 2015).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit[.]" *Hamilton*, 232 F.3d at 477 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). When evaluating whether a genuine issue as to any material fact exists, a court may not weigh the evidence or evaluate the

credibility of witnesses. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)). Factual controversies are resolved in favor of the nonmoving party; however, there must be an actual controversy—both parties must have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "In viewing the summary judgment record, any factual inferences are drawn in favor of the nonmovant." *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997) (citation omitted).

b. Qualified Immunity

Qualified immunity alters the summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an officer asserts the qualified immunity defense, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (citation omitted). "[A]ll inferences are [still] drawn in [the plaintiff's] favor." *Id.*

Qualified immunity is a two-prong inquiry: first, whether the officer's conduct violated a plaintiff's statutory or constitutional right, and second, whether that right was "clearly established" at the time of the violation. *McVae v. Perez*, 120 F.4th 487, 492 (5th Cir. 2024). The second prong of the qualified immunity analysis "is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citations omitted). Courts are permitted to address these steps in either order and do not need to reach both if one

proves dispositive. *Dawes v. City of Dallas*, No. 22-10876, 2024 WL 2268529, at *1 (5th Cir. May 20, 2024) (per curiam).

c. <u>Section 1983</u>

The elements of a § 1983 malicious prosecution claim are as follows:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024).

"In order to establish a Fourth Amendment claim for false arrest under Section 1983, a plaintiff must establish the state common law elements of false arrest, as well as the deprivation of a constitutional right." *Cuadra v. Hous. Indep. Sch. Dist.*, No. H-07-3300, 2009 WL 10703694, at *10 (S.D. Tex. Aug. 17, 2009) (Froeschner, Mag. J.), *adopted*, *Cuadra v. Hous. Indep. Sch. Dist.*, 4:07-cv-03300, (D.E. 146) (S.D. Tex. Sep. 11, 2009) (Hittner, J.), *aff'd* 626 F.3d 808 (5th Cir. 2010). "The state common law elements require a plaintiff to show that there was a (1) willful detention, (2) it was without consent, and (3) without authority of law." *Id.* (citation omitted).

"To [establish] a [§ 1983] claim for false imprisonment, plaintiffs must [show] (1) an intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Whittington v. City of Cuero*, No. V-06-0011, 2007 WL 951864, at *8 (S.D. Tex. Mar. 28, 2007) (Rainey, J.) (citation modified). In addition to those elements, the Plaintiff must also demonstrate "the deprivation of a constitutional right caused by the false imprisonment." *Id.* (citation omitted).

The deprivation-of-a-constitutional-right element shared by both § 1983 false arrest and false imprisonment claims can be satisfied by showing that the arrest/imprisonment was without probable cause. *See id.*; *see also Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (per curiam).

"Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been . . . committed and that the individual arrested is the guilty party." *Brown v. Sudduth*, 675 F.3d 472, 480–81 (5th Cir. 2012) (citation omitted). An officer's subjective beliefs are immaterial, as "probable cause is an objective inquiry based on the facts known to the officer at the time of the arrest." *Ciarletta*, 797 F. App'x at 830–31.

d. Independent Intermediary Doctrine

"[T]he independent intermediary doctrine shields officers from liability for false arrest or malicious prosecution where a warrant is secured from a judicial officer, whose decision regarding probable cause 'breaks the chain of causation' as to such claims." *Leet v. Cotone*, No. 6:24-CV-00586, 2025 WL 923501, at *6 (W.D. La. Mar. 11, 2025) (Ayo, Mag. J.) (citing *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024)), *adopted*, 2025 WL 925811 (W.D. La. Mar. 26, 2025) (Joseph, J.).[14] "The independent-intermediary doctrine persists even when the officer acted maliciously, and when the arrestee was never convicted of a crime." *Hall v. Trochessett*, No. 3:22-cv-363, 2023 WL 4037177, at *4 (S.D. Tex. May 17, 2023) (Brown, J.) (citations omitted). "The independent intermediary doctrine ensures that officers can make reasonable probable cause mistakes: 'A warrant secured from a judicial officer typically insulates law enforcement personnel who rely on

[14] The Court is not aware of any cases that have held that the independent intermediary doctrine shields officers from liability specifically for § 1983 false imprisonment claims. However, the Court finds good reason to hold that the independent intermediary doctrine extends to § 1983 false imprisonment claims as well. As just explained, to state a § 1983 false imprisonment claim, a plaintiff must allege the base elements of false imprisonment, in addition to alleging "the deprivation of a constitutional right caused by the false imprisonment. Allegations of arrest without probable cause are sufficient to establish this final requirement." *Whittington*, 2007 WL 951864, at *8. And the independent intermediary doctrine is designed to shield officers from liability where the probable cause decision was made by a neutral magistrate. *Hughes*, 100 F.4th at 619. Thus, the Court holds that where the constitutional violation alleged within a plaintiff's false imprisonment claim stems from a lack of probable cause, the independent intermediary doctrine defeats that § 1983 false imprisonment claim. The Court does not decide whether the independent intermediary doctrine would also apply where the constitutional violation alleged within the § 1983 false imprisonment claim is unrelated to probable cause.

it' from liability for unlawful arrest, even in the absence of probable cause." *Hughes*, 100 F.4th at 619 (quoting *Villarreal v. City of Laredo*, 94 F.4th 374, 393 (5th Cir. 2024) (en banc)).

There is one functional exception to the independent intermediary doctrine: the *Franks*[15] doctrine. *Id.* The *Franks* doctrine breaks the independent-intermediary shield "where a warrant affidavit (1) contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155–56). "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citation omitted); *see also Fouquet v. Canulette*, 120 F.3d 266, 266 n.1 (5th Cir. 1997) (per curiam) ("More importantly, even if the information was included in the affidavit, probable cause still existed to believe a crime was committed in light of Jane Doe II's statements.").

*ii. Analysis*

Rhodes advances two arguments against all claims: (1) Rhodes is entitled to qualified immunity because probable cause existed to arrest Plaintiff for hindering prosecution or apprehension, (D.E. 43, p. 8–12), and (2) even if there were no probable cause, Rhodes is shielded from liability pursuant to the independent intermediary doctrine, *id.* at 12–15. The Court addresses the independent intermediary argument first.

a. <u>Independent Intermediary Doctrine</u>

[15] *Franks v. Delaware*, 438 U.S. 154 (1978). To be sure, *Franks* addressed the validity of a warrant and did not address the independent intermediary doctrine at all. *See generally Franks*, 438 U.S. 154. The Fifth Circuit has since construed the *Franks* doctrine as an exception to the independent intermediary doctrine. *Hughes*, 100 F.4th at 619.

The Court finds that Rhodes is not shielded by the independent intermediary doctrine. Although the evidence establishes that Rhodes "submit[ted] the facts of this case to a neutral magistrate, who signed the Plaintiff's arrest warrant for hindering prosecution," (D.E. 43, p. 13) (first citing (D.E. 43-2, p. 2); and then citing (D.E. 43-4, p. 1–4)); (D.E. 44, p. 16–19) (Plaintiff not disputing this fact), Plaintiff has shown that the *Franks* doctrine applies here and pierces the independent intermediary shield. *See* (D.E. 44, p. 16–19).

To reiterate, for a plaintiff to show the *Franks* doctrine applies, the plaintiff must establish that the warrant affidavit (1) contains material omissions or false statements, that were (2) made with at least reckless disregard, and (3) necessary to the neutral magistrate's finding of probable cause. *Hughes*, 100 F.4th at 619 (citing *Franks*, 438 U.S. at 155–56). Here, Plaintiff lists five omissions that, he argues, were material to the neutral magistrate's probable cause analysis. (D.E. 44, p. 17–19). "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Kohler*, 470 F.3d at 1113. The Court analyzes each omission in turn and finds that each is either unsupported by competent summary judgment evidence or immaterial.

**1. Omission One: Exculpatory Witnesses**

First, Plaintiff argues that "at no point does Defendant Rhodes reference the numerous exculpatory witness statements taking during the investigation." (D.E. 44, p. 17). This argument misunderstands Rhodes's affidavit. As Defendants point out, the affidavit and arrest warrant were for hindering prosecution, not capital murder. (D.E. 43, p. 1–2, 13). Thus, although Rhodes's affidavit does, in fact, omit reference to various witness statements exculpating Plaintiff of capital

murder, such witness statements are simply not material to the hindering arrest charge, as their inclusion would not affect the probable cause determination. *Kohler*, 470 F.3d at 1113.

**2. Omission Two: "Promptly"**

Second, Plaintiff argues that "the affidavit fails to disclose that the Plaintiff, after being notified, arrived at the Aransas Pass Police Department promptly after finishing work on the very same day—a fact that demonstrates his cooperation rather than evasion." (D.E. 44, p. 17). This fact is not supported by competent summary judgment evidence. The Court has independently reviewed Plaintiff's affidavit and other exhibits, (D.E. 44-2); (D.E. 44-3); (D.E. 44-4); (D.E. 44-5); (D.E. 44-6), yet can find no support for the claim that Plaintiff came to the police department "***promptly*** after finishing work." (D.E. 44, p. 17) (emphasis added). Without evidence to support that proposition, there is likewise no support for the proposition that Rhodes's affidavit omitted it. The Court therefore cannot consider this argument.

**3. Omission Three: Plaintiff's Statement**

Third, Plaintiff argues that Rhodes's warrant affidavit "completely omits crucial facts that . . . highlight the Plaintiff's willingness to assist with the investigation." *Id.* at 18. Specifically, Rhodes's warrant affidavit omits the fact that "Plaintiff voluntarily [came] in for questioning . . . handed over his cellphone, provided his password, and explicitly consented to the Defendants searching it." *Id.* These facts, Plaintiff argues, "directly undermine[] the Defendants' suggestion that the Plaintiff was attempting to hinder apprehension or obstruct their investigation." *Id.*

Plaintiff has provided competent summary judgment evidence to substantiate these facts. Specifically, Plaintiff's affidavit supports the assertion that Plaintiff "voluntarily went to the City of Aransas Pass Police Department to voluntarily give a statement to Officers Rhodes and Poe . . . voluntarily gave [his] cell phone and pass code to Officers Rhodes and Poe to assist in their

investigation, and . . . answered all their questions." (D.E. 44-2, p. 4). Furthermore, Plaintiff states in his affidavit that he is "aware of—no single fact—that was or has been learned by [Defendants] . . . that indicates or establishes that I had or have any more knowledge or information that would have aided in the apprehension of [Plaintiff's brother]." *Id.* at 5.

The competent summary judgment evidence also conclusively establishes that Rhodes's warrant affidavit makes no mention of these particular facts. *See* (D.E. 43-4, p. 1–2). Thus, Plaintiff has shown that the warrant affidavit contains an omission. The Court next determines whether the omission of these facts was material.

Performing the materiality test here, Rhodes's warrant affidavit, (D.E. 43-4, p. 1–2), must be read the exact same, but with the following statement (or something substantially similar) appended: Plaintiff voluntarily came to the police station and gave a statement, which Plaintiff characterized as divulging everything he knew.

The Court finds that inserting this omitted statement into the affidavit, however, is immaterial as it would not change the neutral magistrate's probable cause determination. That is because Plaintiff's characterization of his statement as divulging everything he knew would hold little weight compared to Rhodes's warrant affidavit expressing a belief that Plaintiff "withheld information from the police." (D.E. 43-4, p. 2). Indeed, the basis that Rhodes's affidavit provides to support probable cause that Plaintiff hindered prosecution or arrest, *see* Tex. Penal Code § 38.05, is Rhodes's belief that Plaintiff "did not provide information about the [double homicide] to police, which should have been apparent to him." *Id.* Including Plaintiff's wholly self-serving characterization of his statement as honest and complete would not make it any less likely that he dishonestly withheld information that should have been apparent to him. This omission is therefore immaterial.

**4. Omission Four: Evidence of Intent**

Fourth, Plaintiff argues that "nowhere in the affidavit does it state that Rhodes or Poe have evidence that [Plaintiff] intended to hinder the apprehension of Omar." (D.E. 44, p. 18). This omission is immaterial because it relates to a lack of evidence, and that lack of evidence did not dissuade the neutral magistrate from signing the warrant in the first instance. In other words, Rhodes's warrant affidavit, by not including evidence of Plaintiff's intent, already implicitly indicates that Rhodes did not have evidence of intent at that time or chose not to include it. The magistrate then signed the warrant anyway. Thus, inserting a statement into the affidavit that says Rhodes did not presently have evidence of intent would not change the magistrate's probable cause determination. *See Kohler*, 470 F.3d at 1113.

**5. Omission Five: Custody of Plaintiff's Brother**

Fifth, and finally, Plaintiff takes issue with Rhodes's affidavit's omission of the fact that officers "already had Omar Guerra in custody." (D.E. 44, p. 19). This fact is immaterial because whether police had Plaintiff's brother in custody at the time Plaintiff gave a statement has no impact on the likelihood that Plaintiff withheld information from police—a likelihood that Rhodes's affidavit established in front of a neutral magistrate. *See Kohler*, 470 F.3d at 1113.

Because none of Plaintiff's five omissions are material, they all fail the first element of the *Franks* doctrine. The Court therefore need not reach the remaining two elements, nor need it reach Rhodes's qualified immunity defense, as Rhodes is shielded from liability by the independent intermediary doctrine. *Hughes*, 100 F.4th at 619 (citing *Franks*, 438 U.S. at 155–56).

However, as discussed above, Plaintiff retains all § 1983 claims against Rhodes on the theory that Defendants, including Rhodes, detained and prosecuted him for capital murder despite "police ha[ving] zero evidence linking [Plaintiff] to the double homicide." (D.E. 51-1, p. 21).

Because Rhodes did not raise the qualified immunity defense or any other argument as to this theory of liability, Plaintiff's § 1983 claims survive this round of summary judgment. *Childers v. San Saba Cnty.*, A-14-CV-916, 2016 WL 10988779, at *7 (W.D. Tex. Apr. 22, 2016) (Lane, Mag. J.) (denying qualified immunity where the defendant failed "to articulate his qualified immunity defense pertinent to the facts as alleged"), *adopted*, 1:14-CV-916, 2016 WL 10988778 (W.D. Tex. May 13, 2016) (Yeakel, J.); *Rivens-Baker v. Collier*, 2:23-CV-334, 2025 WL 642927, at *7 (S.D. Tex. Jan. 17, 2025) (Hampton, Mag. J.) ("Denial of qualified immunity is appropriate where defendants offer conclusory assertions of qualified immunity devoid of any analysis as to the elements of qualified immunity and how they apply to Plaintiff's claims against them." (citation modified) (collecting cases)), *adopted*, 2025 WL 642051 (S.D. Tex. Feb. 27, 2025) (Morales, J.).

The Court will permit Rhodes to file a motion for summary judgment as to the capital murder theory of Plaintiff's § 1983 claims. To the extent additional discovery is required, the Parties should state as such in their joint status report.

The Court revisits, one last time, the table of live claims:

| **DEFENDANT** | **PLAINTIFF'S CLAIMS** | **LITIGATION STAGE** |
|---|---|---|
| City of Aransas Pass | (1) *Monell* (customary policy)<br>(2) *Monell* (failure to train)<br>(3) *Monell* (failure to supervise)<br>(4) Ratification<br>(5) Conspiracy | Discovery |
| San Patricio County | (1) *Monell* (failure to train)<br>(2) Ratification | Discovery |
| Captain Kyle Rhodes | (1) § 1983 Malicious Prosecution | Discovery/Summary Judgment |

| | | |
|---|---|---|
| | • Capital murder<br><br>(2) § 1983 False Arrest<br>• Capital murder<br><br>(3) § 1983 False Imprisonment<br>• Capital murder | |

## III. Conclusion

After thoroughly reviewing Plaintiff's proposed second amended complaint and the applicable law, the Court **GRANTS in part** Plaintiff's motion for leave as to Plaintiff's failure-to-train under the single-incident exception claim and ratification claim against San Patricio County. (D.E. 51). Amendment would not be futile, as these amended claims cure the deficiencies in Plaintiff's former pleading and would survive a Rule 12(b)(6) motion to dismiss. The Court **DENIES in part** Plaintiff's motion for leave as to Plaintiff's *Monell* customary policy claim and conspiracy claim, as amendment as to these claims would be futile. The Court therefore **ORDERS** the Clerk to file, as a separate docket entry, Plaintiff's proposed second amended complaint. (D.E. 51-1). Additionally, the Court **DIRECTS** the Clerk of Court to **TERMINATE** Detective Troy Poe and Chief of Police Eric Blanchard as Defendants in this matter.

Furthermore, after thoroughly reviewing the record in this case and the applicable law, the Court **GRANTS** Rhodes's motion for summary judgment. (D.E. 43). Rhodes is shielded by the independent intermediary doctrine because Plaintiff's alleged omissions from Rhodes's warrant affidavit are immaterial to the neutral magistrate's probable cause determination as to hindering prosecution or apprehension. Plaintiff retains his § 1983 claims, however, based on the theory that there was no probable cause to arrest or prosecute him with capital murder.

Finally, the Court **ORDERS** the Parties to meet and confer regarding any potential discovery that has not already been completed relevant to Plaintiff's live claims against the City

and the County, as well as Plaintiff's live § 1983 claims against Rhodes. The Court further **ORDERS** the Parties to file a joint status report **on or before August 24, 2026** stating the date planned discovery can reasonably be completed. The Court will enter an amended scheduling order, including a new summary judgment deadline as to all Parties, based on the Parties' stated discovery-completion date.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
July 24th, 2026